**WEST COAST FAST FREIGHT, Inc. v. UNITED STATES.**

No. 13403.

United States Court of Appeals Ninth Circuit.

June 12, 1953.

---

Glanz & Russell and Theodore W. Russell, Los Angeles, Cal., for appellant.

Chauncey Tramutolo, U. S. Atty., and Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before MATHEWS, HEALY and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellant is a motor carrier holding a certificate of convenience and necessity from the Interstate Commerce Commission, hereafter Commission, to engage in transportation in interstate or foreign commerce. It is authorized to engage in the transportation of "commodities generally, * * * except dangerous explosives," between certain designated points.

Sometime prior to the year 1950 the United States Government Sierra Ordnance Depot at Herlong, California, began routing traffic over appellant's lines. The shipments with which we are here concerned were transported from Herlong, California, to San Francisco or Oakland, California, by Wells Cargo, Inc., a connecting motor carrier. At Oakland or San Francisco the freight was turned over to appellant for transportation to Washington or Oregon points.

Appellant was charged in thirteen counts with transporting, in interstate commerce, shipments of dangerous explosives without there being in force and effect with respect to appellant a certificate of public convenience and necessity issued by the Interstate Commerce Commission authorizing such interstate operations.

In order to sustain the convictions against appellant it is of course necessary that the commodities transported by appellant come within the exception in its certificate of convenience and necessity contained in the words "dangerous explosives."

Appellant contends that "primary jurisdiction" to determine the meaning of the term "dangerous explosives" rests with the Commission. We think it has done so. Exhibits 23 and 24 are publications issued by the American Trucking Associations, Inc., Tariff Bureau, and contain regulations issued by the Commission for transportation of explosives and other dangerous articles by motor, rail and water. Exhibit 24, under the heading explosives, contains a sub-heading divided into four classifications, three of which are pertinent here, viz.: Class A. Dangerous Explosives; detonating or otherwise of maximum hazard. Class B. Less dangerous explosives; inflammable hazard. Class C. Relatively safe explosives; minimum hazard. In the case of Strickland Transportation Co., Inc., Extension, Dangerous Explosives, 49 M.C.C. 595 (1949), the Commission pointed out that explosives encompassed by the term dangerous were clearly set out under the designation made in its classifications. That the classification made by the Commission under the words "dangerous explosives" as shown by Exhibit 24, is a sufficient definition of the exception contained in the certificate is not disputed by appellant. But, argues appellant, a significant change was made by the Commission in subsequent regulations which were in effect at the time of the alleged offenses and with which we are now concerned. In the regulations (Exhibit 23) in force at the time of the alleged offenses, the Commission used the following language:

"Class A explosives: detonating or otherwise of maximum hazard.
"Class B explosives: flammable hazard.
"Class C explosives: minimum hazard."

■ It will be noted that the above statement of classes eliminates the word "dangerous" formerly used. Appellant argues that this elimination is significant and resulted in stripping from the regulations a definition of dangerous explosives, and that the interpretation of the term "dangerous explosives" as made in the Strickland case is no longer controlling. We see a valid reason for eliminating the word "dangerous." It was superfluous. When you say an explosive is a hazard, you say it is dangerous, and if it is a maximum hazard it is extremely dangerous. So, it seems clear that explosives listed by the regulations as maximum hazards are not only dangerous but extremely so. The explosives alleged to have been carried by appellant are listed under Class A, which the Commission, having "primary jurisdiction", has defined as a maximum hazard. A carrier transporting detonating fuses, explosive projectiles for cannon, ammunition for cannon with explosive projectiles, hand grenades, black powder and rocket ammunition with empty projector should be quite cognizant of the fact that they are dangerous, and such was the type of explosive appellant was convicted of carrying.

■ Appellant alleges error in the overruling of its objection to the introduction into evidence of Exhibits 3, 4, 5, 6, 11, 14, 15, 16, 17, 18, 19, 21 and 22. These exhibits are photostatic copies of freight bills taken from the records of appellant. Freight bills of this type are generally prepared by appellant's traffic department. The general manager of the Oakland terminal operated by appellant testified that to the best of his knowledge the information appearing on the freight bills was taken from freight bills of Wells Cargo Company, the initial transportation agent, or from Government bills of lading. Appellant says the information contained in the freight bills is hearsay in that it had no opportunity to check the contents of the truck which it received under seal and did not open. Under the law it could have made the check had it so desired. These freight bills were prepared responsive to requirements of regulations issued by the Commission and in the regular course of business [1] and as such

1. 49 Code of Federal Regulations 172.1—
Information to be shown—provides:

"(a) Every common carrier by motor vehicle subject to the jurisdiction of this

were admissible under 28 U.S.C.A. § 1732;[2] the weight to be given them as evidence was for the trial court.

■ In arguing the sufficiency of the evidence appellant urges that the statements contained in the bills of lading as to the contents of trucks which it moved over its lines are insufficient to establish knowledge on the part of appellant that it was transporting dangerous explosives and that statements, made in the exhibits, being the sole evidence of the alleged unlawful transportation, the Government failed to make out a case. Substantial evidence other than the fact that the freight bills disclose the nature of the contents of the trucks is present. The freight bills constitute links in the chain of circumstances shown. Here we have evidence of a shipment originating at an ordnance depot operated by the United States Government at Herlong, California. The truck is sealed, as required by law, at the time of its receipt by appellant with seals affixed at Herlong and in addition with placards attached as required by T. 49 of the Code of Federal Regulations § 77823, which requires that a motor vehicle carrying Class A and Class B explosives shall be marked on each side and rear with a placard or lettering not less than three inches high on a contrasting background, as follows:

"Explosives Class A, explosives,

"Explosives Class B, dangerous."

(The above quotation of required placard-

Commission shall, on and after the first day of January, 1937, cause to be shown on the face of each and every receipt or bill of lading issued for the transportation of property by such carrier in interstate or foreign commerce, information which shall include the names of the consignor and consignee; the points of origin and destination; the number of packages, description of the articles, and weight, volume of measurement (if the lawfully applicable rates or charges are published to apply per unit of weight, volume or measurement) of the property received; and a record of this information shall be kept by the carrier by the preservation of a copy of such receipt or bill of lading.

"(b) Every common carrier by motor vehicle subject to the jurisdiction of this Commission shall, on and after the first day of January, 1937, when collecting transportation charges, issue a freight or expense bill covering each shipment, and the original of such freight or expense bill shall be receipted on payment of the transportation charges and furnished to the shipper or the receiver, whichever may pay the charges; and shall cause to be shown on the face thereof the names of the consignor and consignee (except that as to reconsigned shipments the freight or expense bill shall not show the name of the original consignor); the date of shipment; the points of origin and destination (except that as to reconsigned shipments the freight or expense bill shall not show the original shipping point unless the final consignee pays transportation charges upon such original shipping point; the number of packages, description of the articles, and weight, volume or measurement of the property transported (if the lawfully applicable rates or charges are published to apply per unit of weight, volume or measurement); the exact rate or rates assessed; the total charges to be collected including a statement of the nature and amount of any charges for special service and the points at which such special service was rendered; the route of movement indicating each carrier participating in the transportation service, and the transfer point or points through which the shipment moved; and a record of this information shall be kept by the preservation of a copy of such freight or expense bill."

2. Title 28 U.S.C.A. § 1732 provides as follows:

"§ 1732. Record made in regular course of business; photographic copies

"(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility. * * *"

ing seems to be incomplete but we have followed the record.)

Mr. Melvin E. Strock, district manager for appellant in the Bay area, testified that the trucks carrying the shipments from Herlong handled by appellant were so placarded by the Government and bore the placards at the time the trucks were turned over to appellant for further transportation. These circumstances were before the trial court in addition to the freight bills. It was the trier of the facts. We think it had substantial evidence to support its finding that the trucks contained dangerous explosives, as that term has been defined by the Commission and used in the exception contained in the certificate of convenience and necessity issued to appellant. That appellant was made aware of what it was transporting and did so knowingly and wilfully in the absence of a required permit is apparent.

Judgment affirmed.