UNITED STATES of America

v.

Joseph Ralph OLIVO, Appellant.

No. 13051.

United States Court of Appeals
Third Circuit.

Argued March 10, 1960.

Decided May 2, 1960.

Albert G. Besser, Newark, N. J. (Martin D. Moroney, Newark, N. J., on the brief), for appellant.

Paul T. Smock, Asst. U. S. Atty., Newark, N. J. (Chester A. Weidenburner, U. S. Atty., Newark, N. J. on the brief), for appellee.

Before GOODRICH, STALEY and FORMAN, Circuit Judges.

STALEY, Circuit Judge.

Appellant's attack upon his conviction is tripartite, alleging (1) error by the court in admission of a waybill into evi-

dence pursuant to the Federal Business Records Act, 28 U.S.C. § 1732; (2) failure of the prosecution to prove theft of the air compressor from a designated place along the interstate route, as provided in 18 U.S.C. § 659; and (3) error by the court in denying his motion for judgment of acquittal.

The appellant, Joseph Ralph Olivo, was indicted under 18 U.S.C. § 659 by the Grand Jury for the District of New Jersey on February 17, 1959. The indictment contained eight counts charging unlawful possession of eight separate items of merchandise, all alleged to have been stolen from the Newark, New Jersey, terminal of Spector Freight System, Inc., while moving in interstate commerce. Following presentation of its direct case, the government moved for dismissal of counts 1 and 5, and the court granted appellant's motion for judgment of acquittal on counts 3, 4, 7 and 8. A similar motion as to counts 2 and 6 was denied. Appellant renewed this motion at the end of the case, but it was once again denied. Upon submission of the case to the jury a verdict of guilty was returned as to count 6, which involved possession of an air compressor, and a verdict of not guilty returned with reference to a fan (count 2). Accordingly, the appellant was sentenced to pay a $500 fine and placed on probation for five years.

The facts relied upon by the government, which the record amply supports, may be summarized as follows: Pursuant to an order from the Safeway Stores, Incorporated, the Gardner Denver Company on July 10, 1958, shipped to Safeway Store No. 951, South River, New Jersey, an air compressor bearing serial No. 217759 by way of Lee Transportation Company and Spector Freight System, Inc. (Spector). On the following day employees of Spector made out a waybill bearing No. 05–170057 to cover the shipment of the air compressor. On July 12, 1958, the air compressor was received at Spector's Newark terminal, and on July 15, 1958, it was loaded on trailer truck 7222 for delivery. The compressor was returned to the terminal unde-

livered, and the driver executed a Spector Driver's Report for Over and Returned Freight. When the dock supervisor went to reload it the next day, he found it to be missing. Late in December, agents of the Federal Bureau of Investigation, after obtaining the signed permission of appellant, searched his home and discovered the compressor in the rear of his basement behind cartons and under a tarpaulin. One of the FBI agents testified that appellant stated he was minding the compressor "for a guy" and didn't care to disclose his name for fear he would get him into trouble. At trial, appellant testified he had ordered a compressor from a man at the Ramp Restaurant parking lot and that he had purchased it from him in September or October of 1958 for $160. He further testified he had seen the man selling various things for over a period of two years but did not know his name. Three of appellant's fellow workers at the Spector terminal also testified concerning this individual, but they were equally unable to identify him by name.

 Initially, appellant urges that the admission of the waybill pertaining to the shipment of the air compressor into evidence was error. The government tendered it for admission to establish the interstate character of the shipment. Under Section 659 of Title 18, the waybill or other shipping document of such shipment is prima facie evidence of the place of origin and the place of destination. The court, however, correctly recognized that admission of the waybill itself into evidence was to be tested by the ordinary rules and concluded that it was admissible pursuant to the Federal Business Records Act, 28 U.S.C. § 1732(a). The Act provides:

"(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occur-

rence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind."

Specifically, appellant's objection is grounded upon the fact that the witness who testified concerning the waybill and its preparation did not actually prepare it himself nor did he directly supervise its preparation. Rather, Mr. Dillman, Spector's Newark terminal manager, testified to the company procedures concerning preparation of waybills in general and indicated that they were prepared at the point of origin within the Spector transportation system. Where Newark was the point of origin they were prepared under his supervision, but since this shipment had originated with another carrier it was waybilled by Spector when delivered to it at Peoria, Illinois. Extensive testimony was taken from Dillman concerning the preparation, use and billing procedures connected with Spector waybills. We are asked to hold that this waybill is inadmissible under the Business Records Act since no official or employee of the Spector system at Peoria testified regarding these matters. We are not prepared to place such stringent restrictions on this Act, for it was intended to eliminate the technical requirement of proving the authenticity of records and memoranda by the testimony of the maker. The Supreme Court has said that the Federal Business Records Act "should of course be liberally interpreted so as to do away with the anachronistic rules which gave

rise to its need and at which it was aimed." Palmer v. Hoffman, 1943, 318 U.S. 109, 115, 63 S.Ct. 477, 481, 87 L.Ed. 645. The witness testified to a well-established business procedure not only in the trade, but specifically in the very company which had prepared the document. All the hallmarks of authenticity surround this document, since it was made pursuant to established company procedures for the systematic, routine, timely making and preserving of company records. As the Court of Appeals so aptly stated in Korte v. New York, N. H. & Hartford R. R. Co., 2 Cir., 191 F.2d 86, 91, certiorari denied 1951, 342 U.S. 868, 72 S.Ct. 108, 96 L.Ed. 652, the statute was intended "to bring the realities of business and professional practice into the courtroom in usable form," and the statute should not be interpreted in a "dryly technical" way which would "reduce sharply its obvious usefulness." See also United States v. Eisenberg, 2 Cir., 1956, 238 F.2d 143; and West Coast Fast Freight, Inc. v. United States, 9 Cir., 1953, 205 F.2d 249. Appellant's additional point that there was testimony that the waybill was "kept" in the regular course of business but not that it was "made" is simply not supported by the record.

As to appellant's second contention, in regard to 18 U.S.C. § 659, i. e., that the section applies only to thefts from specifically designated places along the interstate commerce route (including depots), the government concedes that it is accurate, as it must. See United States v. Manuszak, 3 Cir., 1956, 234 F.2d 421; United States v. Cohen, 3 Cir., 1921, 274 F. 596. Here, however, the government argues that it proved the theft from the Newark terminal. On the other hand, the appellant conceded that the evidence established that the compressor was at one time physically on the premises of the Spector depot and that it was taken away from the depot for delivery. It is at this point that the appellant vigorously takes issue with the government's case, for he contends that "only the flimsiest evidence" was offered to demon-

strate that the compressor was ever returned to the depot. The driver of the truck upon which the compressor had been loaded had no recollection concerning its non-delivery or return. However, the government introduced to supply this vital link in the chain of evidence the waybill pertaining to the air compressor and, attached to it, a driver's report for over and returned freight.

 Inasmuch as we have already concluded that admission of the waybill was proper, the only remaining issue is the admissibility of the driver's report for over and returned freight (driver's report). Once again the trial judge relied upon the Business Records Act, the appellant claims erroneously. The appellant concedes that the trial judge based his ruling on Dillman's testimony that the driver's report, as a part of the business routine, had been attached physically to the waybill covering the compressor and that the driver's report reflected freight returned to the terminal. However, due to the failure of the driver's report itself to refer to any specific items of merchandise and due to the fact that the person who prepared it was unable to relate it to any specific transaction, appellant contends that the document's relevancy was never established. In effect there is no objection raised as to the authenticity of the driver's report but rather it is contended that relevancy is not established by the Business Records Act. However that may be, appellant cites no cases to support the proposition that relevancy cannot be imparted to a document solely by its physical attachment to another document. Inasmuch as the evidence in the record supports the authenticity of the document and the business practice of attaching the driver's report to the pertinent waybill at the time of return of the merchandise, we are convinced that the report meets the test of relevancy and thus is admissible. This, of course, does not preclude the opposing party from arguing its merit or value as evidence to the jury.

In support of its final point, appellant relies on United States v. Russo, 3 Cir., 1941, 123 F.2d 420, 423, where in commenting on the quality of circumstantial evidence required to support a criminal conviction we stated that "it is necessary that the directly proven circumstances be such as to exclude every reasonable hypothesis but that of guilt." However, reliance upon the Russo case is misplaced, for as we have indicated in a number of cases, but most recently in United States v. Giuliano, 3 Cir., 1959, 263 F.2d 582, 584:

" * * * Although there may have been some doubt at an earlier date, it is now well settled that the evidence need not be inconsistent with every conclusion save that of guilt, provided it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Allard, 3 Cir., 240 F.2d 840, certiorari denied 1957, 353 U.S. 939, [77 S.Ct. 814, 1 L.Ed.2d 761]."

The judgment will be affirmed.