**A. Arthur TRACY, also known as Arthur Tracy**

v.

**Morris C. GOLDBERG, also known as M. C. Goldberg, Appellant.**

No. 13403.

United States Court of Appeals Third Circuit.

Argued March 7, 1961.

Decided April 18, 1961.

Samuel Kagle, Philadelphia, Pa., for appellant.

David F. Maxwell, Philadelphia, Pa. (Leonard Zissu, New York City, of the New York Bar, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and FORMAN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This litigation is the culmination of a bitter personal feud between two former friends.

On March 23, 1949 Tracy loaned Goldberg $25,000. The latter paid $8500 on account. Tracy sued for the balance. At the trial the balance was admitted due but Goldberg counterclaimed for (1) money allegedly advanced Tracy totaling $2,694.41 (2) for alleged services in connection with difficulties arising out of a building enterprise, for these Goldberg claimed $50,000. (3) for alleged services regarding purchase of Tracy's interest in the building corporation. Goldberg asked $100,000 on this claim.

The jury found in favor of the plaintiff on his complaint and for him against Goldberg on the counterclaim.

The first proposition argued is that the trial judge overstated the quality of proof appellant needed in order to establish his counterclaim. Appellant was allowed exceptions to the points on behalf of the plaintiff read by the court to the jury. Appellant states that one of these covered the now objected to language. The joint appendix contains 573 pages. Why appellant did not print the point to which he refers and on which he must rely is not readily apparent. His only other stated basis of objection in this connection is the language of his attorney when he said, "I also take an exception about your instruction to the jury about the burden of proof, where it is equally balanced, sir." The present contention has nothing to do with that particular segment of the charge. However, to eliminate any kind of doubt as to whether the question should have been considered by us we have examined it at length.

We find that the judge presented this phase of the case to the jury accurately and fully. He started off by saying, "In a civil case, such as this, the party who has the burden of proof must produce evidence of greater persuasive power than the other party on the factual issues on which he has the burden." Speaking of the questions submitted to the jury within this rule he said: "The party who has the affirmative of the issue has the burden of proof on each of these questions."

He then in a common sense statement said to the jury:

"Now, this burden of proof is often expressed by saying, the party having this burden of proof must establish these facts by the weight or the fair preponderance of the evidence. The law expects you to go through the process of sorting out in your minds, according to persuasive power, the evidence on each issue, and you put the evidence for the plaintiff on one side and the evidence for the defendant on the other. If the evidence for the plaintiff has a greater persuasive power, then you decide for him and you don't have to bother about the burden of proof. If the evidence for the defendant has the greater persuasive power, you decide for him, and you don't have to bother about the burden of proof. The only time you have to bother about the burden of proof is when there is such doubt in your mind that you don't know how to decide. When the evidence seems equally balanced in your mind, and we describe it as, your mind is in equilibrium, then if that is so you must decide against the party having the burden of proof or give the 'No' answer to the question. It is like the scale in the grocery store, you go in and you buy three or four pounds of apples and the grocery man puts a four-pound weight on one side, and he tries to get the four pounds of apples to exactly balance, and it is only when they exactly balance like that, that this becomes important. You know how hard it is to get the exact balance. If there is just a little more evidence of a little more persuasive power in your mind, then you decide according to that persuasive power and you don't bother about this burden of proof. It is only when your mind is in equilibrium you decide against the party having the burden of proof."

Following that he told the jury the plaintiff had the burden on the complaint and regarding the counterclaim, "On these other questions, they are all on the counterclaim. The defendant has the burden of proof on those, and if you decide that he has not sustained that burden you give the 'No' answer, or you give the smaller amount of damages, if you decide to answer Questions 5 and 7."

Still dealing with counsel's points for charge the judge commented, "While the burden rests upon the party who asserts the affirmative by a preponderance of the evidence, this rule does not require a demonstration or such degree of proof

that allows absolute certainty, since in human affairs absolute certainty is seldom possible. In this case, defendant Goldberg carries the burden of proving the allegations of his counterclaim by a clear preponderance of the credible evidence."

It is noted that in the last above quoted sentence the court said, " * * * a clear preponderance of the credible evidence." This inadvertence, resulting apparently from the word "clear" appearing in one of the requests, was so inconsequential after the elaborate instruction which had just preceded it that neither counsel noticed it. As it happened, immediately after the burden of proof points had been disposed of, the court called both attorneys to side bar for the purpose of noting their objections to the charge. The attorney for the defendant went first, objected to three items and as to his fourth and last said, as has been mentioned, "I also take an exception about your instruction to the jury about the burden of proof, where it is equally balanced, sir." There was simply no objection to the use of the word "clear" or even mention of it made to the court.

■ We are satisfied that on the whole charge the mistake was de minimus; the jury was not left with the impression that there was a higher grade of proof needed for the counterclaim than for the complaint.

■ Appellant's next point is that, "The Court erred in instructing the jury that Earnest and Fine were not interested witnesses and had no reason not to tell the whole truth." Here admittedly no objection was made on behalf of the defendant. Despite this, in view of appellant's protestations, we have scrutinized the charge to see if there was prejudicial error in this instance. There is nothing called to our attention or revealed by the transcript to indicate that the statement that these people were not interested was inaccurate. Irrespective of that, the charge turned over the credibility of the testimony squarely to the jury. Said the judge, "It is also your function to evalu-

ate the testimony * * *." And as to witnesses, " * * * whether you think they testified with frankness and candor, or otherwise, * * *. * * * But you must consider all those things in determining what you believe were the facts. What is the truth; what really happened here."

Finally after the judge had referred to the disinterest of Earnest and Fine he specifically instructed that:

"*It is the quality of the testimony which is important and this must be determined by each juror for himself and herself upon the tendency of the evidence to persuade you or not to persuade you.*" (Emphasis supplied).

Not only from the above but on the whole record in this trial of sharply defined issues and proof, we conclude that the district court's above characterization resulted in no substantial prejudice to the defendant.

■ Appellant's third point is that the trial court erred in admitting into evidence a letter dated May 2, 1949. The exhibit, a letter from plaintiff to defendant, receipt of which was never denied, was objected to as a self-serving declaration. It was properly allowed by the judge because as he stated to counsel, "You see, there is still in issue the question of when the debt was to be repaid and this letter, it seems to me, has relevance on that question. You admit now the obligation." As to it being a self-serving declaration, the court said: "That is for the jury to consider, but it does show a demand for payment, at least as of this date in May of 1949." It is now argued that the claim of plaintiff in the letter to be in a "strapped" financial condition was brought before the jury to arouse sympathy for him and prejudice the defendant. This argument loses whatever little force it may have possessed when an examination of Goldberg's testimony develops that he on at least two separate occasions related how during that period plaintiff had told him " * * * that he had nothing * * *

he was being terribly mistreated * * * he had no income and he is broke"; " * * * he was just in very, very bad and horrible shape and he was wearing ragged clothes, he had nothing, he had nothing."

█ The only other point needing special notice was the acceptance into evidence of an office memorandum of Mr. Earnest, the Washington attorney who represented one Stevens with whom plaintiff was in litigation in 1948. It was for alleged services in connection with the Stevens affair that Goldberg sued Tracy on counts 2 and 3 of his counterclaim. Part of Tracy's defense to those claims was that Goldberg had nothing to do with the Stevens matter after August 5, 1948. Goldberg admitted in his testimony that he had not rendered any services once the Tracy-Stevens controversy had been turned over to the lawyers to draw up an agreement between the parties.

Earnest testified that on August 5, 1948, he conferred with Katz, the representative of his client Stevens, as to drafting a settlement agreement between him and Tracy. The next day he prepared a memorandum of that conference. After that he talked with Tracy's representative. He testified that as a result of that conversation and his memorandum of August 6, 1948, he prepared a formal written agreement for execution by the parties. That agreement was executed August 13, 1948.

The objection to the admission into evidence of the memorandum was that it was used to refresh the recollection of the witness. On behalf of plaintiff it was urged as competent " * * * to establish the time that the people got down to Washington and gave the instructions to counsel."

It seems to us that the exhibit was correctly accepted as a business record made by Mr. Earnest in the regular course of his practice and serving not only as his record of his conference with Katz for his client but as his base for the agreement which he drew.[1]

The most that is urged against the memorandum going into evidence is that no need for it was shown. That was a matter of judgment for plaintiff's attorney. The record does support appellee's contention that the contents of the memorandum simply outlined the general terms of the contemplated settlement which was not contrary to defendant's general account of it.

The remaining contentions of appellant have all been examined. They are without merit. This was an angry, hard fought trial which the district judge made sure was conducted with fairness to both sides. There is no error here in any way warranting reversal.

The judgment of the district court will be affirmed.

---

1. 28 U.S.C.A. § 1732; Lind v. Schenley Industries, Inc., 3 Cir., 1960, 278 F.2d 79, 88, certiorari denied 1960, 364 U.S. 835, 81 S.Ct. 835, 5 L.Ed.2d 60; United States v. Olivo, 3 Cir., 1960, 278 F.2d 415, 416–417; McKee v. Jamestown Baking Co., 3 Cir., 1952, 198 F.2d 551, 556.