**AIR LAND FORWARDERS, INC., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

Nos. 91–924C, 91–926C, 91–927C, 91–929C, 91–930C, 91–933C, 91–934C, 91–938C, 91–940C & 91–941C.

United States Court of Federal Claims.

Aug. 7, 1997.

Alan F. Wohlstetter, Washington, DC, for plaintiffs.

Steven J. Abelson, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger (Timothy J. McGrath, Department of the Air Force and Joseph Goetzke, U.S. Army Claims Service, of counsel), for defendant.

## OPINION

MEROW, Judge.

Plaintiffs are common carriers and freight forwarders that transported household goods for members of the armed forces. This portion of the litigation involves the claims of fourteen service members whose property was pilfered or damaged during transport.[1] The following facts are derived from the pleadings and trial record in this matter.

### FACTS

The claims in this suit generally observed the following procedures. The Military Traffic Management Command retains a carrier to move a service member's household goods when he or she is transferred to a new post or is separated from service. The carrier will prepare an inventory of the goods (which describes their condition), pack, move and then unpack the goods. At the new destination, the carrier tenders DD Form 1840 (Joint Statement of Loss or Damage at Delivery) to the service member who annotates which items, if any, have been damaged or are missing. The document is then endorsed by the two parties. The service member has 70 days to inspect the household goods further and to file DD Form 1840R (Notice of Loss or Damage) with the appropriate military claims office if there are additional declarations.

A claim against the United States for lost or damaged goods commences when a service member files DD Form 1840R with a military claims office.[2] The individual will then

---

1. This litigation embraces twenty consolidated complaints, 91–922C through 91–941C. The parties, however, selected the claims of fourteen service members for trial to obtain guidelines for the efficient disposition of the substantial number of remaining claims. *See* August 23, 1993 Order *at* 5. At trial the plaintiffs were Suddath Van Lines, Inc. (91–924C, 91–926C, 91–927C); Aalmode Transportation Corp. (91–929C); Paul Arpin Van Lines, Inc. (91–930C); TEK Van Lines, Inc. (91–930C); Interstate Van Lines, Inc. (91– 940C and 91–941C); Interstate International, Inc. (91–938C); and Ace Van & Storage, Inc. (91–933C and 91–934C).

2. The head of an agency may settle and pay not more than $40,000.00 for a claim against the federal government made by a member of the uniformed services for damage to, or loss of, personal property incident to service. 31 U.S.C. § 3721(b)(1).

receive DD Form 1842 (Claim for Personal Property Against the United States) and DD Form 1844 (Schedule of Property and Claim Analysis Chart) to substantiate and perfect a claim.[3] DD Form 1842 notifies the claimant about his or her rights and obligations; requests information on the circumstances of the claim; and is the vehicle used to assign to the United States any claim the individual may have against the carrier or an insurer for the loss at issue. DD Form 1844 is used to itemize the lost or damaged property, and to record its cost, purchase date and replacement or repair cost. The claimant may also submit supporting documents, *e.g.*, repair estimates (for claims greater than $100.00) and proofs of purchase. In some instances, a claims inspector will survey the property and file DD Form 1841 (Government Inspection Report). An adjudicator uses this compilation of documents to calculate a payment or deny a claim. The service member may accept the decision or appeal. Judicial review of the final agency decision on the service member's claim is not available. 31 U.S.C. § 3721(k); *Merrifield v. United States*, 14 Cl.Ct. 180 (1988).

■ If the military compensates a service member, it will seek reimbursement from the carrier with DD Form 1843 (Demand on Carrier/Contractor) and the documents mentioned above. The carrier has 120 days to respond. If there is no response, or the parties cannot reach a settlement, the Defense Finance and Accounting Service sets off the amount demanded against monies due the carrier for other shipments.[4] In this suit, the plaintiffs seek refunds of such offsets.

### DISCUSSION

There are two primary issues in this suit. First, plaintiffs challenge the authenticity and admissibility of several categories of documents that defendant offered at trial to prove plaintiffs' liability for the loss and damage items at issue. Second, plaintiffs argue that, should the documents be admitted into evidence, defendant nevertheless failed to sustain its burden of proof concerning their liability. Plaintiffs conclude that, in these circumstances, defendant must refund the contested offsets. Given the relatively small dollar amount for each of the many loss or damage items involved in this litigation, it is not feasible for either party to incur the expense of calling witnesses with personal knowledge of each event. The expense of trial would negate the benefit of any success achieved. Accordingly, this litigation involves determinations based essentially on documents offered in evidence. The testimony presented was from persons responsible for the files and who could explain the claims process utilized.

### Evidentiary Issues

#### Authentication

The plaintiffs dispute[5] the authenticity of repair and replacement estimates,[6] a credit card statement,[7] insurance company documents,[8] and correspondence from service members to the claims offices.[9] The plaintiffs argue that some of this evidence was not properly authenticated at trial because defendant's witnesses had no personal knowledge of the particular claim or document. They also argue that other documents are not public records and thus cannot be authenticated through Fed.R.Evid. 901(b)(7).

■ Authentication is a condition precedent to admissibility; all that is required is a

---

3. The Air Force equivalent of both forms is AF 180.

4. The federal government may set off loss and damage claims against payments due carriers for unrelated transportation charges. *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1020 (Fed.Cir.1995); *IML Freight, Inc. v. United States*, 639 F.2d 676, 678, 225 Ct.Cl. 393, 396 (1980).

5. The defendant has enumerated several exhibits that plaintiffs have not challenged. *See* Def's Br.

at 10. Plaintiffs' enumeration will be followed. *See* Pls.' Br. at 19 n. 8–11.

6. Def's Ex. 29, 55, 63–64, 119–123, 212–216, 249–250, 277–287, 325–329, 416–418, 583–586, 606, 633, and 680–684.

7. Def's Ex. 607.

8. Def's Ex. 549–551.

9. Def's Ex. 548, 604, 631 and 676–679.

foundation from which the fact-finder can infer that the evidence is what the proponent claims it to be. Fed.R.Evid. 901(a); *McQueeney v. Wilmington Trust Co.,* 779 F.2d 916, 928 (3rd Cir.1985) (citations omitted). Absent controlling legislation, the testimony of a subscribing witness is not necessary to authenticate a writing. Fed.R.Evid. 903; *McQueeney,* 779 F.2d at 928. In fact, authentication by circumstantial evidence is uniformly recognized as permissible. *McCormick on Evidence* § 222 at 44 (4th ed.1992).

■ It is concluded that the challenged exhibits were sufficiently authenticated. First, the contents of the documents affirm their authenticity. Fed.R.Evid. 901(b)(4) ("[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances" may establish authenticity). The estimates refer to the damaged property at issue, were contemporaneously created, signed by an estimator, written on letterhead, and addressed to the service member.[10] *See In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238, 293 (3rd Cir.1983) (firm logo helps establish authenticity of memoranda), *rev'd on other grounds, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The credit card statement is addressed to the particular claimant and includes information typically found in such an invoice. The insurance documents include a copy of a USAA check payable to the claimant, a letter on USAA letterhead, and an apparent subrogation agreement between USAA and the service member. The contested correspondence was written by a service member or a dependent, was contemporaneously created, references the pertinent issues, and has signatures that are identical to others in the particular file. In sum, the specificity and official appearance of the mentioned documents is evidence of their authenticity. *See McQueeney,* 779 F.2d at 929 (citations omitted).

Second, the documents are in defendant's possession thus providing further evidence of authenticity.[11] *McQueeney,* 779 F.2d at 929 (documents produced in response to discovery request are probative of authenticity); *Burgess v. Premier Corp.,* 727 F.2d 826, 835–36 (9th Cir.1984) (exhibits found in defendant's warehouse were adequately authenticated simply because they were found there); *In re Japanese Electronic Products,* 723 F.2d at 286 (evidence of authenticity is that documents came from a source where such documents are likely to be kept).

■ Third, the documents are authentic because they conformed to the demands of Fed.R.Evid. 901(b)(7). This rule permits the authentication of public records obtained from the public office where such papers are to be kept. *McCormick on Evidence* § 224 at 47. A public record is any writing or data compilation that has been authorized by law to be recorded or filed in a public office. 5 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 901(b)(7)[01] at 901–119.

Army and Air Force regulations authorized the submission of the disputed documents. Army claims files may include repair estimates, appraisals, paid bills, private insurance paperwork, and any other documents that could support a claim against a carrier. Def's Ex. 856 (AR 27–20 ¶ 11–36). Similarly, Air Force claims files may include repair bills, estimates, replacement cost quotations, investigative reports, insurance information, and any other information that can substantiate a claim. Def's Ex. 737 (A.F.R. 112–1 ¶ 6–43(a)(17)-(18)).[12]

■ Proof of custody can be confirmed by a certificate of authenticity from the public office, by the testimony of a public official whose duty it is to keep such records, or by

---

10. Some of the documents include all of these characteristics while others include most of them.

11. The records are housed at the Personnel Claims and Recovery Division, U.S. Army Claims Service, Fort Meade; and the General Claims Division, Air Force Legal Services Agency, Boll-

ing Air Force Base. *See, e.g.,* Def's Ex. 1 (Army) and 74 (Air Force) (examples of certification that original documents housed at the two locations).

12. *See* 31 U.S.C. § 3721(j) (authorizes military departments to prescribe regulations for personal property damage claims).

the testimony of a witness with knowledge that the evidence is in fact from a public office authorized to keep such a record. *5 J. Weinstein & M. Berger, Weinstein's Evidence* ¶ 901(b)(7)[01] at 901–119. As noted earlier, the disputed documents were retained by the claims offices and were accompanied by certificates of custody. *See* n. 11, *supra.*

### Hearsay

■ A document is not admissible into evidence simply because it has been authenticated. *5 J. Weinstein & M. Berger, Weinstein's Evidence* ¶ 901(a)[02] at 901–28. The plaintiffs contend that documents service members submitted to the claims offices (DD Forms 1840R, 1842 and 1844, AF 180,[13] estimates, credit card statement, and insurance company papers) and documents prepared by claims office personnel (chronology sheets, memoranda for the record, and inspection reports) are inadmissible hearsay. Plaintiffs assert the documents are not factual findings of a public agency (Fed.R.Evid. 803(8)(C)) and are not records of regularly conducted business activities (Fed.R.Evid. 803(6)). The defendant insists that the first and second group of documents are admissible pursuant to Rule 803(8)(C) and Rule 803(6), respectively.

Agency records, reports, statements or data compilations may be admitted into evidence if these materials constitute "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(8)(C).

■ The inspection reports are the only materials that conform to Rule 803(8)(C). They are final, were written by Army or Air Force personnel, are based on firsthand inspections of articles and packing containers following shipment, and are authorized by regulation. *See* A.F.R. 112–1 ¶ 6–24 (Def's Ex. 726) (Air Force); DA PAM 27–162 ¶ 2–41(7) (Def's Ex. 877) (Army). The reports are trustworthy because the inspectors certified to their accuracy (Def's Ex. 23–24, 410–415), included photographs to support the findings (Def's Ex. 192–194) or were timely prepared (Def's Ex. 23–24, 192–194). *See McCormick on Evidence* § 296 at 291 (factors of trustworthiness).

■ The plaintiffs attack the reliability of one report concerning damage to the household goods of LTC. Larry Whipple (Def's Ex. 410–415), because it was prepared 14 months after the goods were delivered. Timeliness is relevant; however, the delay affects the weight of this report, not its admissibility. Plaintiffs attack another report (Def's Ex. 192–194) because it includes recommendations. Portions of investigatory reports otherwise admissible under the Rule are not inadmissible because they state a conclusion or opinion. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170, 109 S.Ct. 439, 450, 102 L.Ed.2d 445 (1988). Rather, the conclusion or opinion is admissible—with the other portions of the report—provided that it is based on a factual investigation and it is trustworthy. *Id.* This report is admissible under the *Beech Aircraft* ruling.

■ Rule 803(8)(C) does not support the admission of the other cited documents. The first collection—DD Forms, estimates, credit card statement, and insurance company papers—were not prepared by the claims officers; therefore, they are not Army or Air Force findings. *See Brown v. Sierra Nevada Memorial Miners Hosp.*, 849 F.2d 1186, 1189 (9th Cir.1988) (consultants' letters to agency not reports or statements of agency). The second collection—chronology sheets and memoranda for the record—are also not findings, but are interim documents prepared by Army and Air Force personnel during the adjudication process. *See McCormick on Evidence* § 296 at 291.

■ Rule 803(6) supports the admission of both collections. Records of regularly conducted activities are not normally self-proving, as public records may be. *4 J. Weinstein & M. Berger, Weinstein's Evi-*

---

**13.** Plaintiffs do not object to the portions of DD 1842, DD 1844 and AF 180 "completed by claims office officials which defendant claims are admissible under FRE 803(8)(C)". Pls.' Br. at 30 n. 19.

*dence* ¶ 803(6)[2] at 803–195. Accordingly, Rule 803(6) mandates that a custodian or other qualified witness testify that the records were "kept in the course of a regularly conducted business activity" and that "it was the regular practice of that business activity to make" the record. *Forward Communications Corp. v. United States,* 221 Ct.Cl. 582, 629, 608 F.2d 485, 511 (1979).

The chronologies and memoranda may be admitted into evidence because they comply with Rule 803(6). The defendant verified that Army and Air Force personnel prepare and retain these documents during adjudication. Tr. at 42–50, 132–133 (testimony of deputy chief of Army Personnel Claims and Recovery Division); Tr. at 410–415, 449–450 (testimony of Air Force assistant claims officer). Furthermore, these documents are reliable because they were contemporaneously drafted. *See Munoz v. Strahm Farms, Inc.,* 69 F.3d 501, 503 (Fed.Cir.1995) (reliability is basis for admitting evidence under the business records exception) (citing *Saks Int'l, Inc. v. M/V Export Champion,* 817 F.2d 1011, 1013 (2nd Cir.1987)).

■ In certain circumstances, Rule 803(6) reaches the records of a business entity that is not one of the parties. *Saks Int'l, Inc.,* 817 F.2d at 1013 (citations omitted). In other words, documents may be admitted into evidence as the business records of one of the parties to a suit through a witness who is not an employee of the entity that owns and prepared them. *Id.; see also Munoz,* 69 F.3d at 503–504 (citing *Saks Int'l, Inc.*) (witness could testify about film and its dated frames—Kodak representative not necessary—because it was witness's regular practice of sending film to Kodak for processing and date verification). The witness must testify, however, that it was the entity's regular practice to obtain information from such a person, *id.,* or that the records were integrated into the office's records and relied upon in its day-to-day operations. *United States v. Mendel,* 746 F.2d 155, 166 (2nd Cir.1984) (Markey, C.J., sitting by designation) (citations omitted), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985).

■ The remaining documents at issue (DD Forms, estimates, credit card statement and insurance documents) comprise admissible hearsay pursuant to the Rule 803(6) category. The Army and Air Force expected— and the regulations permitted—service members to submit whatever documentation they had to substantiate their claims. Tr. at 67 (Army); Tr. at 420 (Air Force). The services would then integrate and rely upon these materials during the adjudication process. Tr. at 66–68, 80, 93, 96–98 (Army witness discusses contents of claims files and use of documents at issue); Tr. at 420–424 (Air Force witness engages in similar discussion). These business records have the requisite assurance as to reliability because a service member can be fined and imprisoned for presenting a false claim. Tr. at 88–89 (Army); Tr. at 435 (Air Force); *see also* 10 U.S.C. §§ 907, 932, 934; 18 U.S.C. § 287; DD Form 1842. Moreover, Army and Air Force personnel were responsible for becoming familiar with the competency of estimators in the area and with the estimating process thus enabling them to reject questionable estimates. Tr. 71–73, 127–128 (Army); Tr. at 426–435 (Air Force).

### *Liability Issues*

■ The second primary issue in this suit is whether the defendant satisfied its burden of proof for the disputed claims, *i.e.,* were the offsets justified. A carrier is liable for the actual loss or injury to the property it transports. *Missouri Pacific Railroad Co. v. Elmore and Stahl,* 377 U.S. 134, 137, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194 (1964) (citations omitted); *see also* 49 U.S.C. § 14706 (which codifies the common-law rule concerning carrier liability). A carrier is not an absolute insurer, however, and will escape liability if it can demonstrate that the damage was caused by an act of God, the public enemy, public authority, the shipper, or the inherent vice or nature of the goods. *Missouri Pacific Railroad Co.,* 377 U.S. at 137, 84 S.Ct. at 1144.

■ In an action to recover from a carrier for damaged property, the shipper must establish a *prima facie* case by showing delivery in good condition, arrival in damaged condition, and the amount of damages.

*Id.* at 138, 84 S.Ct. at 1144–45. The burden then shifts to the carrier to show that it was not negligent and that the damage to the cargo was due to one of the causes just mentioned. *Id.* At bottom, the carrier bears "the loss which it cannot explain." *Missouri Pacific Railroad Co.*, 377 U.S. at 144, 84 S.Ct. at 1148.

Plaintiffs maintain that the first group of contested claims were not substantiated. In other words, the offsets were improper because defendant did not prove the damages element of a *prima facie* case.

### Sergeant Anthony Hofmann (Suddath Van Lines, Inc., No. 91–926C)

The Army set off $1,260.00 against amounts owed to plaintiff Suddath Van Lines for damage to Sgt. Anthony Hofmann's "shrunk" (a German-manufactured wall unit). The carrier charges that the repair estimate "provided for repair of considerably more damage than that noted by the claimant" and included $60.00 in fees which were not its responsibility. Pls.' Br. at 63–64. The estimate (Def's Ex. 29), however, is merely more detailed than the loss form (Ex. 9) and inspection report (Def's Ex. 23) because it describes the repairs to be performed; it does not describe new damage. The defendant concedes that the fees should not have been offset and agrees to reimburse the plaintiff. Def.'s Reply at 27 n. 5.

### Specialist Robert Heavel (Aalmode Transportation Corp., No. 91–929C)

Plaintiff Aalmode Transportation damaged several pieces of Spec. Robert Heavel's furniture. Spec. Heavel submitted a repair estimate for $675.00. Def's Ex. 51. The Army, however, adjusted for preexisting damage and depreciation and set off $595.00 which included $25.00 for a kitchen chair claim not involved in this round of litigation. The plaintiff urges that this $570.00 offset at issue was unreasonable because plaintiff had obtained a $230.00 estimate. Def's Ex. 63–64.

A claimant need not prove damages with exact certainty or mathematical exactitude. *Daly Construction, Inc. v. Gar-*rett, 5 F.3d 520, 522 (Fed.Cir.1993) (citations omitted). Rather, it is sufficient if the evidence enables the court to make a fair and reasonable approximation. *Id.* An estimate is a reasonable measure of damages if it was prepared by a suitable establishment and it is comparable to the prevailing price in the area. *Interstate International, Inc.*, B–197911, 1989 WL 240769 (Comp.Gen.), May 25, 1989; *see also American Van Services, Inc.*, B–247767, 1992 WL 232423 (Comp. Gen.), September 4, 1992. A lower estimate tendered by a carrier does not necessarily fully negate the other's reasonableness. *Interstate International, Inc.*, B–197911, 1989 WL 240769 (Comp.Gen.), May 25, 1989. However, faced with two estimates, from established furniture shops in the area, setting forth substantially differing repair amounts, the question is raised whether defendant has met its burden of showing the amount of damages. *Missouri Pacific Railroad Co.*, 377 U.S. at 138, 84 S.Ct. at 1144–45; *S.C. Johnson & Son v. Louisville & Nashville R. Co.*, 695 F.2d 253, 261 (7th Cir.1982).

If the damage were limited to $230.00 there is no dispute. Plaintiff's estimate in this amount establishes the reasonableness of an offset of at least $230.00. However, there is no indication in the record that plaintiff's $230.00 estimate received serious attention. In the absence of any record evidence negating the reasonableness of the $230.00 estimate or the $675.00 estimate provided by Spec. Heavel, it is concluded that equal evidentiary weight should be afforded to both submissions. This results in a conclusion that the offset of $570.00 was excessive in the amount of $180.00.

In the nature of a jury verdict, it is fair and reasonable to split the difference between the competing estimates.[14] *See S.W. Electronics & Manufacturing Corp. v. United States*, 228 Ct.Cl. 333, 351–352, 655 F.2d 1078, 1088–89 (1981). This is the most reliable method of computing damages because there is a relatively wide disparity between two estimates that were prepared by quali-

---

**14.** The $180.00 reflects adjustments to plaintiff's repair estimate for depreciation and preexisting damage.

fied furniture shops in the Tidewater, Virginia area.

### Captain Mark E. Presar (Interstate International, Inc., No. 91–938C)

The Air Force set off $2,299.00 against plaintiff Interstate International because it damaged Capt. Mark Presar's sofa and hide-a-bed, and lost his rocking chair. The plaintiff contests this assessment because the estimate for the first two items was unsigned and written on a blank form, and because defendant's witness did not have specific knowledge at trial about the rocking chair.

■ The offset has not been shown to be unwarranted. Once the amount of damages has been shown, the carrier has the burden of proving that the damages are unreasonable. *Ambassador Van Lines, Inc.*, B–249072, 1992 WL 320393 (Comp.Gen.), October 30, 1992. Interstate offered no evidence that the bed and sofa could have been repaired more economically nor did it present evidence that $574.00 was an unreasonable amount to replace the rocking chair. *See American Van Services, Inc.*, B–261975, 1995 WL 660157 (Comp.Gen.), November 9, 1995. In essence, plaintiff is merely disputing the authenticity and admissibility of defendant's evidence. This objection has been previously addressed and rejected.

### Major Richard P. Deave (Interstate Van Lines, Inc., No. 91–940C)

■ Plaintiff Interstate Van Lines challenges the offsets for damage to Maj. Richard Deavel's household goods. Plaintiff maintains that the offsets for a cedar chest, dresser, and medicine chest should be refunded because the estimate "does not describe the damage to be repaired." Pls.' Br. at 68. A refund is not warranted because the estimate contemplated "repair[ing] and touch[ing] up" the first two articles and "touch[ing]" up the third. Def's Ex. 214. These repairs are consistent with the damage sustained (cracks, scratches and chips, respectively) and with the cost of repair ($28.00, $52.00 and $36.00, respectively). Def's Ex. 209–210, 214.

■ Maj. Deavel noted a one-inch tear and puncture holes in a leather chair when it was delivered to his new post. The Air Force subsequently set off $1,197.90, the depreciated replacement cost. Plaintiff maintains that this was an unreasonable amount because the damage was minimal and because defendant did not make a concerted effort to get the chair repaired. The record does contain a report of a claims officer that indicates a possibility the chair could be repaired for about $700.00. Def's Ex. 182. However, Interstate exercised its salvage rights, took possession of the chair, and had it restored for $175.75. In this circumstance, no basis for refunding the offset has been shown in that Interstate has obtained the chair at essentially its depreciated replacement cost.

Lastly, plaintiff argues that the offset for a glass table top should also be refunded because the estimate was not authenticated and because it is hearsay. As noted previously, it is concluded that the evidence is admissible, and it is sufficient to sustain the offset.

### Lieutenant Stanley C. Wittenberg and Sergeant Cary W. Janicke (Interstate Van Lines, Inc., No. 91–941C)

During transport, plaintiff Interstate Van Lines damaged the effects of Lt. Stanley Wittenberg and Sgt. Cary Janicke. The Air Force set off $505.00 for the first claim and the Army set off $135.00 for the second. Plaintiff essentially concedes that it damaged the property (Pls.' Br. at 68–69) and then reiterates its evidentiary challenge of the estimates (Def's Ex. 277 and 249). Again, the offsets are proper because plaintiff has not refuted defendant's *prima facie* case.

### Senior Airman Darrell S. Wright (Suddath Van Lines, Inc., No. 91–927C)

With respect to the offset involved here, and several to follow, the carrier involved asserts that the defendant did not establish its *prima facie* case by showing that the goods were tendered in "good condition." That is, it is asserted that the offsets were improper because the items were not damaged by the carrier; rather, they had been damaged before conveyed for transport.

The Air Force set off $135.00 against plaintiff Suddath Van Lines for damage to Sr. Armn. Darrell Wright's headboard. The

plaintiff argues that the offset should be refunded because it was assessed for preexisting damage.

The descriptive inventory recorded that the headboard had dents, scratches and rubs on the top and front edges; the shelves were scratched; and the edges were dented, chipped and rubbed. Def's Ex. 320. The DD Form 1840R, executed after delivery, indicates that there was a "deep scratch in front" and that the "handles [were] missing." Def's Ex. 324. The repair estimate contemplated replacing two missing "door pulls," and to "fill and touchup" gouges on the "top front center," scratches on the "left door bottom style" and the "left inside front edge," and paint rubs on the "top left edge." Def's Ex. 328; see also Tr. at 528–529.

■ It is concluded that the offset is excessive in the amount of $90.00. This sum should be refunded to Suddath Van Lines for the headboard offset. First, the estimate of repair (Def's Ex. 328) delineates damage that is nearly identical to that recorded in the descriptive inventory (Def's Ex. 320); however, the Air Force made no adjustment for preexisting damage. Second, as is discussed previously with respect to the Heavel claim, it is fair and reasonable to reduce the offset by two thirds and assess the carrier for its damage: the missing door pulls and some scratches. See Daly Constr., 5 F.3d at 522. Third, having compared the before and after delivery descriptions of the headboard, a two-thirds reduction is concluded to be the most reliable method to compute the plaintiff's damages.

Plaintiff makes a similar objection concerning an offset for a kitchen table. A refund is not justified for this item because the Air Force made appropriate adjustments for preexisting damage (Def's Ex. 305) and the evidence otherwise supports the offset.

### Staff Sergeant Douglas C. Shipley (Paul Arpin Van Lines, Inc. and TEK Van Lines, Inc., No. 91–930C)

Plaintiffs object to an offset for SSG. Douglas Shipley's "shrunk." [15] The damage reported on the descriptive inventory (Def's Ex. 334) differs from that reported after shipment (Def's Ex. 342, DD Form 1840R), suggesting that the shrunk was damaged during shipment. Plaintiffs did not rebut this evidence, though noting that SSG. Shipley did not submit an estimate to validate his claim.

Plaintiffs must bear the loss because they have offered no explanation for it. Missouri Pacific Railroad Co., 377 U.S. at 144, 84 S.Ct. at 1148. The Army did not demand an estimate because SSG. Shipley claimed less than $100.00. Tr. at 68. Furthermore, the offset was appropriate because it reflected a deduction for preexisting damage (Def's Ex. 345 (DD Form 1844)) which was substantiated by comparing the inventory to the various loss forms.

### Lieutenant Colonel Larry K. Whipple (Ace Van & Storage, Inc., No. 91–934C)

The Air Force set off $120.00 against plaintiff Ace Van & Storage, Inc., for damage to several of LTC. Larry Whipple's household goods. The carrier urges that it is entitled to a refund because the charge represents a levy for preexisting damage.

It is concluded that the evidence supports a refund of the offset for a dresser ($32.50), television cabinet ($25.00) and washing machine ($30.00). While the offset did account for preexisting damage for the first two items, it was nevertheless deficient because the damage reported on the inventory (Def's Ex. 398–399) for all three items is largely indistinguishable from that asserted to be plaintiff's responsibility. Def's Ex. 408–409 (DD Forms 1840 and 1840R); Def's Ex. 386 (DD Form 1844).

■ A refund is also warranted for the dresser, television cabinet and a coffee table ($32.50) because the defendant proffered an unreliable repair estimate to substantiate the claim.[16] The repair estimate was prepared nearly two years after delivery. Def's Ex. 416; Tr. at 727; see American Van Services, Inc., B–247767, 1992 WL 232423 (Comp.

---

**15.** Plaintiff has dropped its objection to a $10.00 offset for a tear in an ironing board cover. Pls.' Br. at 71 n. 39.

**16.** There was no estimate for the washing machine. Def's Br. at 64.

Gen.), September 4, 1992 (shipper did not meet *prima facie* burden because estimate, obtained two years after shipment, did not indicate that it was based on material and labor costs at time of discovery). A service member does have two years to perfect a claim, but there must be some assurance that an assessment represents the carrier's damage. A current estimate can provide that guarantee. A late estimate is not necessarily unreliable, but it should have other indicia of reliability, *e.g.*, a description of the damage and indications that cost has been adjusted. The instant estimate was not contemporaneous and did not contain supplementary information.

### Captain Steve J. Norris (Paul Arpin Van Lines, Inc., No. 91–930C)

For this claim and several to follow, the carrier involved contends that defendant did not establish that the particular household goods involved were tendered for shipment. That is, it is asserted that the "delivery" element of a *prima facie* case has not been established.

A carrier will not be relieved of liability for a lost item simply because it does not appear on the inventory; particularly, when the carrier packed the box, prepared the inventory, and it would have been common to include the item in the box. *American Van Services, Inc.*, B–261975, 1995 WL 660157 (Comp.Gen.), November 9, 1995; *see also American Van Lines, Inc.*, B–257887, 1995 WL 257110 (Comp.Gen.), April 27, 1995. At the same time, a carrier cannot be assessed liability for a lost item solely on the shipper's acknowledgement of the penalty for filing a false claim as this would place an unreasonable burden on the carrier's ability to rebut the claim. *Department of the Army*, B–205084, 1983 WL 26925 (Comp. Gen.), June 8, 1983 (*aff'g Paul Arpin Van Lines*, B–205084, 1982 WL 26857 (Comp. Gen.), June 2, 1982). The shipper must present some substantive evidence of tender to establish the delivery element of a *prima facie* case, *id.* (citing *Missouri Pacific Railroad Co.*, 377 U.S. at 138, 84 S.Ct. at 1144–45), *e.g.*, tampering (*see Fogarty Van Lines*, B–235558.4, 1991 WL 71656 (Comp.Gen.),

March 19, 1991); proof of purchase (*see Aalmode Transportation Corp*, B–240350, December 18, 1990); or the personal knowledge the shipper has of circumstances surrounding tender (*see Department of the Army*, B–205084, 1983 WL 26925 (Comp.Gen.), June 8, 1983; *Trans–American Van Service, Inc. v. Shirzad*, 596 S.W.2d 587, 592 (Tex.Civ.App. 1980) (contents of box not itemized, but shipper's testimony concerning details of packing established tender)).

With respect to the $22.40 offset at issue, plaintiff Paul Arpin Van Lines, Inc., contests liability for Capt. Steve Norris' telephone by asserting that there is no evidence that it ever received the item. Plaintiff notes that the telephone was not listed on the inventory, but was assertedly packed in a carton containing "hall items." Def's Ex. 515 (DD Form 1844); Def's Ex. 515 (inventory). Defendant counters that tender is evidenced by Capt. Norris' acknowledgement of the penalties for a false claim (Def's Ex. 513–514) and the strong likelihood that a telephone would be packed with other items from a hallway or its closets.

In this circumstance, it is concluded that the $22.40 offset should be returned because there is insufficient evidence that the plaintiff ever received the telephone. The defendant's assertion concerning packaging lacks sufficient reliability considering the Air Force's admission to the carrier that it is "more than likely [that the telephone] was never packed and that is why there is no evidence of mishandling or tampering [with the carton]." Def's Ex. 491.

### Captain Flora M. Tate (Ace Van & Storage, Inc., No. 91–933C)

Plaintiff Ace Van & Storage, Inc., disputes the offset for eight place settings of china, a coffee pot and lid claimed to be missing from a shipment of the household goods for Capt. Flora M. Tate. The plaintiff is entitled to a refund of $140.00 for the latter two items because they were not part of Capt. Tate's claim. Tr. at 609–610 (Air Force witness testifies that offset is unjustified); Def's Ex. 580–581 (DD Forms 1840 and 1840R); Def's Ex. 586 (replacement estimate).

It is also concluded that plaintiff is entitled to a refund of $680.00 for the place settings because defendant has not met its burden of proof. The china was assertedly packed in box 132 which was described as a "dishpack of k-ware [kitchenware]." Def's Ex. 566 (inventory). Kitchenware is defined as kitchen utensils—pots and pans—not dishes. *Webster's New World Dictionary* at 745 (3d college ed.1988). It is unlikely that such metallic objects would have been packed with fine china. Furthermore, the inventory notes that box 137 was a "dishpack of k-dishes [kitchen dishes]." Def's Ex. 566; Tr. at 619. This suggests that the inventory would have noted that box 132 also included dishes, particularly since plaintiff packed the box and prepared the inventory. Def's Ex. 566; *see American Van Services, Inc.*, B–261975, 1995 WL 660157 (Comp.Gen.), November 9, 1995.

### Private Troy E. Greene (Suddath Van Lines, Inc., No. 91–924C)

The Army set off $122.00 for Pvt. Troy Greene's Nintendo and telephone that were allegedly lost when plaintiff Suddath Van Lines, Inc., moved his effects. The plaintiff insists that the offset should be refunded because the defendant did not establish tender. The defendant counters that a credit card statement (Def's Ex. 607) noting charges at Target and Toys R Us establishes proof of purchase. Defendant also argues that "it is imminently reasonable to assume that the carrier decided to pack" the items with clothes. Def.'s Br. at 68. (Pvt. Greene had stated that the items were packed in inventory item 41, which is described as clothes. Def's Exs. 595, 598.)

It is concluded that the offset lacks evidentiary support because the circumstance is insufficient to establish the loss. While the Nintendo need not be specifically itemized, it is improbable that electronic goods would be packed in a carton of clothes. *Compare American Van Services, Inc.*, B–261975, 1995 WL 660157 (Comp.Gen.), November 9, 1995 (not unreasonable for silver bowls to be packed with other decorative items such as crystal and pictures). Furthermore, while proof of purchase is evidence

of tender, *Aalmode Transportation Corp.*, B–240350, December 18, 1990, the entries on the credit card statement are generic; they do not indicate what was purchased at the stores.

### Warrant Officer Candidate David L. White (Paul Arpin Van Lines, Inc., No. 91–930C)

The Army set off $28.00 against plaintiff Paul Arpin Van Lines, Inc., for a waterbed heater asserted to be lost during the shipment of WOC David L. White's household goods. This offset is warranted. First, WOC White included a separate statement with his claim noting that cartons had been opened, and that the contents had been pilfered and disturbed. Def's Ex. 631; *Fogarty Van Lines*, B–235558.4, 1991 WL 71656 (Comp.Gen.), March 19, 1991 (tampering is evidence of tender). Second, it is quite likely that the heater would be packed with a waterbed headboard, the recorded contents of the box. Def's Ex. 623 (inventory item no. 43). Third, WOC White was aware of the penalties for filing a false claim. Def's Ex. 629. Together, these circumstances establish tender.

### Chief Warrant Officer II Samuel W. Alexander (TEK Van Lines, Inc., No. 91–930C)

The Army set off $292.00 against plaintiff TEK Van Lines, Inc., for silverware asserted to have been lost during a shipment of CW2 Samuel Alexander's household goods. A refund is not warranted. CW2 Alexander included a separate statement that the box at issue had a large hole at delivery (Def's Ex. 676–677) and he knew about the penalties of a false claim (Def's Ex. 669). Additionally, it is probable that the silverware could have been packed with china, the recorded contents of the box. Def's Ex. 662 (box 134). In sum, the defendant proffered sufficient evidence of tender and this was not rebutted by the plaintiff.

### RCFC 54(b) and Final Judgment

This consolidated action involves fifteen plaintiffs and their challenge of offsets in scores of separate damage and loss claims. The fourteen claims involved here were selected from among these scores of claims in

order to reach final determinations that could serve to assist the parties in an attempt to resolve the remaining disputes without substantial further litigation. *See e.g., Trans Ocean Van Service v. United States,* 192 Ct.Cl. 75, 426 F.2d 329 (1970). Thus, final judgment will be entered on these fourteen claims resolved at trial because there is no just reason for delay.

■ RCFC 54(b) provides an exception to the general principle that a final judgment is proper only after the rights and liabilities of all the parties to the action have been adjudicated. *Hogan v. Consolidated Rail Corp.,* 961 F.2d 1021, 1025 (2nd Cir.1992). The rule permits the court to enter a final judgment as to fewer than all of the claims in an action, but only upon an express determination that there is no just reason for delay. *Id.; see also W.L. Gore & Assocs., Inc. v. International Medical Prosthetics Research Assocs., Inc.,* 975 F.2d 858, 861–862 (Fed.Cir. 1992).

■ In deciding whether there are no just reasons to delay any appeal of individual final judgments the court must first consider judicial administrative interests. *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 1464–65, 64 L.Ed.2d 1 (1980). This assessment assures that application of the rule effectively preserves the historic federal policy against piecemeal appeals. *Id.* Therefore, the claim underlying a rule 54(b) final judgment on appeal must be separable from the claims that survive. *Cullen v. Margiotta,* 811 F.2d 698, 711 (2nd Cir.1987), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987) (citations omitted); *see also W.L. Gore & Assocs.,* 975 F.2d at 862.

■ In the instant suit, each claim is separable because the government must establish a *prima facie* case to substantiate each offset; the burden then shifts to the carrier to refute each offset. At bottom, the appellate court will not have to decide the same issues more than once if there are subsequent appeals. *See Curtiss–Wright Corp.,* 446 U.S. at 8, 100 S.Ct. at 1464–65.

The next step involves an assessment of the equities involved. *Id.* There should exist no just reason for delaying an appeal. *Id.* Here it is determined that there is no just reason to delay any appeal by an aggrieved party until the remaining individual claims are adjudicated. Such a delay could, for example, lead to further unnecessary litigation because the parties would not obtain the final guidelines they seek to assist in the efficient disposition of the substantial number of remaining claims. The parties should be free to accept or to contest the evidentiary and other rulings involved in the resolution of these 14 selected claims and thus facilitate the final resolution of all the claims at issue in this consolidated litigation.

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1) Plaintiffs' and defendant's exhibits (delineated in the cumulative index to the trial transcript) that were offered at trial shall be admitted into evidence;

(2) Having determined that there is no just reason for delay, the following partial Final Judgments shall be entered;

(a) Final Judgment shall be entered in favor of plaintiff Suddath Van Lines, Inc., (No. 91–926C) in the amount of $60.00, representing a refund for fees offset stemming from Sgt. Anthony Hofmann's claim;

(b) Final Judgment shall be entered in favor of plaintiff Aalmode Transportation Corp., (No. 91–929C) in the amount of $180.00, representing a refund stemming from Spec. Robert Heavel's claim;

(c) Final Judgement shall be entered in favor of plaintiff Suddath Van Lines, Inc., (No. 91–927C) in the amount of $90.00, representing a refund stemming from Sr. Armn. Darrell Wright's claim;

(d) Final Judgment shall be entered in favor of plaintiff Ace Van & Storage, Inc., (No. 91–934C) in the amount of $120.00, representing a refund stemming from LTC. Larry Whipple's claim;

(e) Final Judgment shall be entered in favor of plaintiff Paul Arpin Van Lines, Inc., (No. 91–930C) in the amount of $22.40, representing a refund stemming from Capt. Steve Norris' claim;

(f) Final judgment shall be entered in favor of plaintiff Ace Van & Storage, Inc., (No. 91–933C) in the amount of $820.00, representing a refund stemming from Capt. Flora Tate's claim;

(g) Final judgment shall be entered in favor of plaintiff Suddath Van Lines, Inc., (No. 91–924C) in the amount of $122.00, representing a refund stemming from Pvt. Troy Greene's claim;

(h) Final Judgment shall be entered in favor of the United States dismissing the claims asserted herein to the extent the offset contested has been determined to be warranted or sustained.

No costs shall be assessed.