**MRT CONSTRUCTION INC., a Texas corporation, Plaintiff–Appellant,**

**v.**

**HARDRIVES, INC., a Minnesota corporation, dba U.S. Industrial Constructors, Defendant–Appellee.**

No. 97–15983.

United States Court of Appeals, Ninth Circuit.

Submitted May 14, 1998.*

Decided Oct. 16, 1998.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a) and Ninth Circuit Rule 34–4.

Steven A. Hirsch, Bryan Cave, Phoenix, AZ; David C. Romm, Watt, Tieder & Hoffar, McLean, VA, for plaintiff–appellant.

Graeme Hancock, Fennemore Craig, Phoenix, AZ, for defendant–appellee.

Before: LAY,[**] KOZINSKI and T.G. NELSON, Circuit Judges.

LAY, Circuit Judge.

In May 1986, the U.S. Department of the Interior, Bureau of Reclamation ("BOR"), awarded Hardrives, Inc. ("Hardrives") a contract to construct a canal in Arizona. The contract incorporates the Contract Disputes Act, 41 U.S.C. §§ 601–613 ("CDA"). The contract terms allow Hardrives to pursue claims against the government for government-caused delays and errors, but also require Hardrives to complete the canal project on time without regard to any government error or misconduct.

In June 1986, Hardrives and MRT Construction, Inc. ("MRT") entered into a subcontract for specified work on the canal, including a major portion of the earthwork on the project. The subcontract requires MRT to complete its assigned work on schedule without regard to government errors. Further, under the subcontract, MRT is not entitled to payment for any work unless and until the government pays Hardrives.

The government furnished Hardrives with plans and specifications for the canal project. These plans and specifications contained several defects. MRT claims these defects caused it significant delays and cost overruns. On April 9, 1987, MRT demanded payment from Hardrives for increased costs. Hardrives claims MRT breached the contract on or around this same date by abandoning the canal project and failing to complete its assigned earthwork.

On April 15, 1987, Hardrives submitted a claim to the BOR, seeking to recover increased costs resulting from the defects in the government's specifications. This claim included MRT's claim as well as other amounts expended by Hardrives. After the BOR rejected or refused to rule on Hardrives' claims, Hardrives appealed to the Interior Board of Contract Appeals ("IBCA"). As of July 1987, Hardrives refused to make any further payments to MRT until all claims between Hardrives and the government were settled. Hardrives ultimately completed MRT's work.

### MRT I

In 1988, MRT sued Hardrives[1] in federal district court, claiming Hardrives breached the subcontract by failing to pay MRT in full. Following a bench trial, the district court[2] issued judgment for Hardrives. *See MRT Constr., Inc. v. Hardrives, Inc.*, No. CIV 88–1768–PHX–WPC (D.Ariz. May 19, 1992) (*"MRT I"*). The court found Hardrives had not breached the subcontract by failing to pay MRT, because the subcontract stated

---

[**] The Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. MRT also named Transamerica Insurance Company as a defendant. Transamerica had issued payment and performance bonds as surety for Hardrives' performance on the canal project.

2. The Honorable William P. Copple, United States District Judge for the District of Arizona.

MRT was entitled to payment only after the government had paid Hardrives. The court determined Hardrives had paid MRT in full for all amounts the government had paid to Hardrives as of the date of trial. Further, the court concluded MRT breached the subcontract by failing to complete the earthwork, and MRT owed Hardrives a total of $141,535. On May 19, 1992, the court awarded Hardrives judgment against MRT for $141,535 plus interest. The court also awarded Hardrives $291,826 in attorneys' fees and litigation expenses.[3]

### Fraud Litigation

Prior to the decision in *MRT I*, the government filed an action in federal district court against Hardrives, alleging Hardrives' claims for increased costs related to the canal project violated the fraudulent claims provision of the CDA, 41 U.S.C. § 604, and the False Claims Act, 31 U.S.C. §§ 3729–3733. MRT cooperated with the government, and MRT's president testified against Hardrives. At the close of the government's evidence, the district court dismissed the case.

### IBCA Proceedings

Shortly after it filed the fraud action against Hardrives, the government moved to intervene in Hardrives' claims before the IBCA and asked the IBCA to stay Hardrives' appeals. The IBCA granted the government's motion and stayed all proceedings on Hardrives' claims.

Upon dismissal of the government's fraud case, the IBCA proceeding resumed, and the IBCA held a hearing on Hardrives' claims. MRT attempted to intervene, asserting: (1) it did not and would not support Hardrives' claims; (2) it would not support the claim because Hardrives notified MRT that pursuant to the subcontract, Hardrives would seek

a payment of attorneys' fees out of any recovery attributable to MRT; and (3) it had not released Hardrives from any claims. On August 4, 1993, the IBCA awarded Hardrives $3,488,360 for additional costs on the canal project. The IBCA also awarded Hardrives interest on those costs. The government paid Hardrives on September 3, 1993.

### The Present Case (MRT II)

On August 26, 1993, MRT filed an action in federal district court seeking, among other things, an equitable accounting for the money Hardrives would receive as a result of the IBCA judgment, a lien on the IBCA award, and a declaratory judgment of the parties' rights concerning the IBCA award. Before trial, the district court[4] made several rulings, including:

1) With respect to any off-sets to which MRT is entitled arising from the costs Hardrives recovered from the IBCA, Hardrives may be entitled to assert a deduction for attorneys' fees and costs incurred in the IBCA proceedings and the earlier fraud litigation;

2) MRT is not entitled to any portion of the interest awarded to Hardrives in the IBCA proceeding;

3) The judgment rendered in *MRT I* is a final judgment, the factual determinations reached in that case bind the court in this case, and MRT is therefore precluded from relitigating factual issues determined in that action.

See *MRT Constr., Inc. v. Hardrives, Inc.*, No. CV 93–1678–PHX–SMM, slip op. at 2–3 (D.Ariz. Apr. 28, 1997). Following trial, and based upon the accounting set forth below, the district court granted judgment in favor of Hardrives for $217,676 plus fees, costs, interest, and post-judgment interest.

---

**3.** MRT has yet to pay this judgment. As a result of its nonpayment, on March 6, 1998, a federal district court issued an order directing the issuance of a writ of special execution and the public sale of MRT's personal property. The order and writ expressly commanded the sale of MRT's rights pending in this appeal. The sale was scheduled for May 6, 1998. On April 10, 1998, MRT filed an emergency motion to stay the judicial sale of its appeal rights. On April 27, 1998, this court denied MRT's motion to stay. On May 6, 1998, MRT filed bankruptcy which stayed the judicial sale of MRT's appeal rights. The effect

of the automatic stay under 11 U.S.C. § 362 caused the scheduled oral argument on appeal to be delayed. Shortly thereafter, MRT moved the bankruptcy court to proceed with all issues presented by this appeal. On May 27, 1998, the bankruptcy court entered an order granting MRT's motion to proceed with all issues presented by this appeal.

**4.** The Honorable Stephen M. McNamee, United States District Judge for the District of Arizona.

A. Total of IBCA award to Hardrives
on September 1, 1993: $2,044,050

  (1) 66%[5] of IBCA award due
    MRT from Hardrives $1,322,673 (sic)*

*Although the district court, as well as both parties show that this figure is $1,322,-673, our computation shows that 66% of $2,044,050 is $1,349,073. Rather than alter this figure and the judgment which reflects this erroneous calculation, we prefer to leave any amendment to the judgment reflecting the proper computation to the district court.

  (2) Less amount Hardrives paid
    to complete MRT's contrac-
    tual duties $1,220,069 (sic)*
    Subtotal due MRT from
    Hardrives $ 102,604 (sic)*

B. Total amount of attorney fees paid
by Hardrives to pursue IBCA and
fraud suit: $1,449,472
  (1) 66% of total fees attributable
    to MRT claims due Har-
    drives $ 956,652
  (2) 66% of net amount of EAJA
    award ($903,000, ¶ 50) due
    MRT from Hardrives for
    fees and costs at statutory
    amount $ 595,980
  (3) Court's disallowance of
    Sinj[e]m Service claim $ 60,750
    Subtotal due MRT from
    Hardrives $ 299,922 (sic)*

C. Miscellaneous costs
  (1) Equipment utilization adjust-
    ment and other equipment
    costs due MRT from Har-
    drives $ 8,515
  (2) Amount due under para-
    graph 54(e) $ 26,620
  (3) Amount due under Para-
    graph 54(f) $ 2,253
    Subtotal due MRT from
    Hardrives $ 20,358
    Total amount $ 217,676 (sic)*

MRT appeals.

## DISCUSSION

### Alleged errors in the Equitable Accounting

■ MRT claims the district court inserted two erroneous figures in its equitable accounting formula. First, MRT claims the court incorrectly inserted $2,044,050 as the amount of the September 1993 IBCA award to Hardrives. MRT claims the correct amount of the IBCA award is $3,488,260, and the IBCA's decision identifies this figure as the proper amount. In response, Hardrives contends the figure of $2,044,050 is correct and represents the portion of the IBCA award that related to MRT's earthwork on the canal project. Hardrives concedes the trial court's labeling could have been clearer in that this figure could have been labeled "total of IBCA award to Hardrives on September 1, 1993, for MRT related work." Hardrives Br. at 25.

In MRT's case to the trial court on the issue of MRT's total expenditures on the project, MRT presented the testimony of its accounting expert, Patricia Mensch. During her testimony, Mensch specifically indicated that MRT's costs related to the project totaled $2,001,409. See Excerpts of R. at 125; Supplemental Excerpts of R. at tab 5. This figure was slightly lower than the figure Hardrives' accounting expert identified as MRT's costs. MRT made no allegations during trial or in any post-trial motion[6] that $3,488,260 somehow represented its costs related to the project.

To now insert the figure of $3,488,260 into the court's accounting formula—a formula MRT does not contest—would result in MRT recovering more than its claimed costs. Neither the parties nor the district court intended such a result. Based on our review of the record, we conclude the figure the district court inserted accurately reflects the portion of the IBCA award to Hardrives that is attributable to MRT-related work. We therefore conclude the district court did not clearly err when it inserted the figure of $2,044,050 into the accounting formula.

■ Second, MRT claims the district court incorrectly inserted $1,220,069 as the amount Hardrives paid to complete MRT's contractual duties. MRT now claims that Hardrives' own exhibit shows the correct figure to be

---

5. According to Hardrives, this figure is an equitable multiplier used by the trial court. MRT urges the figure is based on the subcontract. Regardless of the figure's origin, neither MRT nor Hardrives dispute the percentage used.

6. One purpose of post-trial motions such as a motion for a new trial or motion to amend a judgment is to identify alleged errors to the trial court so that they may be corrected by that court. See Fine v. Paramount Pictures, 181 F.2d 300, 302 (7th Cir.1950). Given this purpose, we find it inexplicable that MRT did not file a motion for a new trial or a motion to amend the judgment, given its claim to this court that the district court inserted an erroneous figure into an otherwise acceptable accounting formula.

$400,440. Hardrives concedes the district court's labeling of the $1,220,069 figure might have been more exact, but maintains the figure is correct.

During its case to the trial court, MRT, through Patricia Mensch, presented evidence that although MRT incurred costs on the project of $2,001,409, MRT also received payments from Hardrives totaling $1,220,000. *See* Excerpts of R. at 125–27; Supplemental Excerpts of R. at tab 5. Mensch thus claimed a preliminary balance due from Hardrives of approximately $781,000. *See id.*

MRT never claimed that $400,440 represented the amount Hardrives paid MRT for MRT's work on the project. Put simply, MRT sought to recover from Hardrives the total paid by the government for MRT's work, less the amount Hardrives had already paid MRT for that work, plus miscellaneous costs and interest. *See* Supplemental Excerpts of R. at tab 5. Thus, while the $1,220,069 figure MRT complains of may not be artfully labeled, the figure nonetheless produces a result that accurately reflects MRT's claims to the district court. Therefore, we conclude the district court did not clearly err when it inserted $1,220,069 into its accounting formula.

### MRT's Entitlement to Interest from the IBCA Award

■ Prior to trial, Hardrives moved for summary judgment on several issues, including whether MRT was entitled to a portion of the CDA interest Hardrives received as a part of the IBCA award. Hardrives contended in its motion that the subcontract does not provide for pre-judgment interest. The district court granted Hardrives' summary judgment motion on this issue, concluding the subcontract did not support MRT's claim for CDA interest, and MRT's earlier claims for payment from Hardrives were resolved against MRT in *MRT I*.

In the present case, MRT claims sixty-six percent of the CDA interest is directly due to and accrued upon MRT's claimed share of the IBCA award. MRT argues this figure is

$1,223,079.05, and the district court erred by refusing to allow MRT to recover this interest. For the following reasons, we agree with the district court's conclusion that MRT is not entitled to recover a portion of the CDA interest Hardrives received as part of the IBCA award.

Under the CDA, a contractor is entitled to interest on amounts found due that contractor. Specifically, section 611 of the CDA provides:

> Interest on amounts found due *contractors* on claims shall be paid to the *contractor* from the date the contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof. The interest provided for in this section shall be paid at the rate established by the Secretary....

41 U.S.C. § 611 (emphasis added). The CDA states that "the term 'contractor' means a party to a Government contract other than the Government[.]" 41 U.S.C. § 601(4).

The subcontract between MRT and Hardrives incorporates the contract, and the contract incorporates the CDA. However, the terms of the subcontract do not extend the CDA's definition of "contractor" to MRT. Moreover, MRT cites no authority in which a subcontractor has been considered a contractor under the CDA's definition of that term. Indeed, we deem it clear that MRT is not a party to the contract between Hardrives and the government, and is therefore not a contractor as that term is used in § 611 of the CDA. *See* 41 U.S.C. §§ 601(4) & 611. Thus, the CDA itself does not entitle MRT to a portion of the interest paid to Hardrives.

Most importantly, however, the subcontract governs the relationship between MRT and Hardrives, and the terms of the subcontract do not entitle MRT to a portion of the interest Hardrives recovered from the government in the IBCA proceeding. The subcontract expressly provides that "[i]n no event shall [MRT] be entitled to receive any form of payment prior to Hardrives, Inc.'s receipt of that payment. [MRT] waives all right of action until said monies are received by Hardrives, Inc."[7] *See* Excerpts of R. at

---

7. Hardrives receipt of payment from the government was delayed in part because of the breach

of contract by MRT in abandoning the project.

36. Under the terms of the subcontract that MRT and Hardrives bargained for, MRT had no right to the monies upon which the CDA interest accrued during the time the interest accrued. Thus, we find the district court did not err when it denied MRT's claim to the interest Hardrives received as part of the IBCA award.[8]

### Alleged Errors in the Accounting of Hardrives' Attorneys' Fees and Expenses

██ During trial, in order to prove its claims of set off and recoupment, Hardrives introduced into evidence, through its chief financial officer, Scott Sinjem, attorney bills generated by the law firm that represented Hardrives in the IBCA proceedings and fraud litigation. MRT claims the evidence is inadmissible hearsay, and the district court erred when it characterized the bills as falling under the business records hearsay exception.

Federal Rule of Evidence 803(6) provides: The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \*

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of prepa-

ration indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed.R.Evid. 803(6). This circuit has held that records a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records. *See United States v. Childs,* 5 F.3d 1328, 1333–34, 1334 n. 3 (9th Cir.1993).

In this case, Hardrives received the bills directly from the law firm and maintained the bills in its files. Further, Hardrives relied upon the bills as statements of fees owed to the law firm. Finally, the record indicates Hardrives had a substantial interest in the accuracy of the bills. For these reasons, the district court did not err in admitting the bills into evidence.

██ MRT also assigns error to the district court for allowing Sinjem to testify regarding the portion of the law firm bills that related to the earthwork portion of the canal project. MRT claims this testimony was inadmissible on the grounds of lack of foundation, hearsay, improper opinion testimony, and speculation. In response, Hardrives contends Sinjem's testimony was admissible as that of the individual who authorized, reviewed, and paid the law firm bills, as well as that of an expert witness in accounting matters. From our review of the record, we conclude the district court did not err when it allowed Sinjem to testify regarding the portion of the law firm

---

8. As a general rule, the non-breaching party to a contract may recover prejudgment interest if the breach consists of a failure to pay a definite sum of money or to render a performance with a fixed or ascertainable monetary value. *See* Restatement (Second) of Contracts § 354. "In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due." *Id.*

MRT breached the subcontract when it abandoned work on the project. MRT later sued Hardrives to recover payment. This suit resulted in a judgment against MRT in favor of Hardrives that remains unpaid. *See MRT I,* No. CIV 88–1768–PHX–WPC. In the unsuccessful fraud litigation the government initiated against Hardrives, MRT cooperated with the government and testified against Hardrives. Finally, MRT attempted to intervene in Hardrives' IBCA proceeding, asserting it did not and would not support Hardrives' claims. Given MRT's conduct toward Hardrives in matters concerning the project, interests of justice support the district court's decision to deny MRT a portion of the CDA interest.

bills that related to the earthwork portion of the canal project.

MRT also claims Hardrives failed to establish or provide the district court a reasonable basis with which to apportion fees and expenses related to the earthwork between effort for the benefit of MRT and effort for the benefit of Hardrives or others. From our review of the record, we conclude Hardrives provided the district court a reasonable basis with which to apportion these fees and expenses.

### MRT's Claim for Attorneys' Fees

In its decision, the district court concluded Hardrives is entitled to recover its attorneys' fees and costs incurred in this case. MRT claims that it, not Hardrives, is entitled to recover attorneys' fees and expenses at the trial and appellate levels. While MRT correctly points out that under Arizona law, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees," Ariz.Rev.Stat. § 12–341.01A, MRT is not the successful party at either the trial level or appellate level. Thus, MRT is not entitled to recover its attorneys' fees and expenses. We affirm the allowance of attorneys' fees to Hardrives.[9]

### CONCLUSION

For the foregoing reasons, subject to the possible correction relating to the mathematical computation in the award, the judgment of the district court is AFFIRMED.

---

9. Our impression of this litigation, as reaffirmed from the record, is that MRT has made frivolous and unjustified claims. We sincerely question its good faith throughout the litigation as exemplified by its arguments. We, however, in our discretion do not award sanctions at this time. If further litigation continues and is frivolous in kind, we would have no hesitancy in altering our position.

