172 F.3d 1338
 AIR LAND FORWARDERS, INC., Plaintiff,
and
Suddath Van Lines, Inc., Aalmode Transportation Corp., Paul
Arpin Van Lines, Inc., Tek Van Lines, Inc., Academy Van &
Storage, Inc., Ace Van & Storage, Inc., Interstate Moving
Systems, Inc., Interstate International, Inc. and Interstate
Van Lines, Inc., Plaintiffs-Appellants,
v.
UNITED STATES, Defendant-Appellee.
 No. 98-5007.
 United States Court of Appeals,
Federal Circuit.
 March 26, 1999.
 
 Alan F. Wohlstetter, Denning & Wohlstetter, Washington, DC, argued for plaintiffs-appellants. With him on the brief was Stanley I. Goldman.
 Steven J. Abelson, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued for defendant-appellee. With him on the brief were David M. Cohen, Director, and James M. Kinsella, Assistant Director.
 Before RICH, BRYSON, and GAJARSA, Circuit Judges.
 Opinion for the court filed by Circuit Judge GAJARSA. Dissenting opinion filed by Circuit Judge BRYSON.
 GAJARSA, Circuit Judge.
 
 
 1
 The appellants ("carriers") appeal from a judgment of the United States Court of Federal Claims holding that the carriers were not entitled to a refund of certain setoffs taken by the United States in connection with transportation contracts between the carriers and the United States.[1] See Air Land Forwarders, Inc. et al. v. United States, 38 Fed. Cl. 547 (1997). The only issue on appeal is whether the Court of Federal Claims erred in admitting into evidence, as business records of the military, certain repair estimates prepared by third parties. Because we find that the trial court did not abuse its discretion in this evidentiary matter, we affirm.
 
 BACKGROUND
 
 2
 The appellants are common carriers and freight forwarders who transport household goods for military service members under contracts with the Military Traffic Management Command. Under these contracts, the carriers act as movers for military service members when they are transferred to a new post or separated from service. The carrier will prepare an inventory of the goods, pack, move, and then unpack the goods. At the new destination, the carrier will tender a joint statement of loss or damage at delivery to the service member to annotate which items, if any, have been damaged or are missing. The document is then endorsed by both parties. The service member then has seventy days to inspect the household goods and file additional claims with the appropriate military claims office. See Air Land Forwarders, 38 Fed. Cl. at 552.
 
 
 3
 A service member initiates a claim against the United States for lost or damaged goods by filing DD Form 1840R (Notice of Loss or Damage) with the military claims office. The service member is then required to file DD Form 1842 (Claim for Personal Property Against the United States) and DD Form 1844 (Schedule of Property and Claim Analysis Chart) to perfect the claim. DD Form 1842 details the circumstances of the claim and assigns any claim the individual may have against the carrier to the United States. DD Form 1844 is used to itemize the lost or damaged property and to record the cost to replace or repair the damaged item(s). In support, the service member may also submit repair estimates prepared by third parties or proof of purchase for the property to prove the amount of the claim.
 
 
 4
 In some cases, a claims inspector will survey the property and file an independent report. An adjudicator for the Military Claims Office reviews the documents submitted by the service member to determine the appropriate reimbursement for claimed losses. If the service member is compensated, the United States will seek reimbursement from the carrier by sending DD Form 1843 together with the service member's supporting documents to the carrier, which has 120 days to respond. If there is no response or the parties cannot reach a settlement, the Defense Finance and Accounting Service sets off the amount demanded against payments due the carrier for other shipments. See, e.g., Dalton v. Sherwood Van Lines, Inc., 50 F.3d 1014, 1020 (Fed.Cir.1995). This appeal concerns the carriers' suit for a refund of particular offsets.
 
 
 5
 Following a trial, the Court of Federal Claims held that some of the carriers were entitled to a refund of certain offsets. See Air Land Forwarders, 38 Fed. Cl. at 562-63. The carriers argue that the offsets not refunded were supported at trial by hearsay repair estimates made by third parties that were improperly admitted into evidence under Federal Rule of Evidence 803(6), entitled "Records of regularly conducted activity" as an exception to Rule 802, the "Hearsay rule." The carriers argue that if these repair estimates had been properly excluded as hearsay by the trial court, the offsets would not have been supported by the evidence, and would necessarily have been refunded.
 
 DISCUSSION
 1. Standard of Review
 
 6
 We review a trial court's decision in an evidentiary matter under an abuse of discretion standard and will only disturb the trial court's ruling if it prejudiced substantial rights and was thus not harmless error. See Applied Med. Resources Corp. v. United States Surgical Corp., 147 F.3d 1374, 1380 (Fed.Cir.1998) ("We review evidentiary rulings of the district court for abuse of discretion, and interfere with its judgment only if an erroneous ruling prejudiced substantial rights."); Kolmes v. World Fibers Corp., 107 F.3d 1534, 1542 (Fed.Cir.1997); Kearns v. Chrysler Corp., 32 F.3d 1541, 1547 (Fed.Cir.1994). An abuse of discretion is found when: (1) the court's decision is clearly unreasonable, arbitrary or fanciful; (2) the decision is based on an erroneous construction of the law; (3) the trial court's factual findings are clearly erroneous; or (4) the record contains no evidence upon which the district court rationally could have based its decision. See Western Elec. Co., Inc. v. Piezo Tech., Inc., 860 F.2d 428, 430 (Fed.Cir.1988).
 
 
 7
 2. Admissibility of Repair Estimates Under Rule 803(6)
 
 
 8
 The carriers argue that the Court of Federal Claims abused its discretion by admitting into evidence under Rule 803(6) the repair estimates produced by third parties and submitted by the service members as "business records" of the military. The carriers argue that Rule 803(6) requires, as a prerequisite to admission, the production of a qualified witness to testify that the documents were prepared by a person regularly engaged in the production of such documents. The carriers argue that the requirements for admissibility under Rule 803(6) have not been met in this case because the government's witnesses could not establish that: (1) the estimates had been prepared by persons with first hand knowledge of the damage; (2) the preparer of the estimate was engaged in the regular business of repairing damaged goods; and (3) the preparer provided estimates as part of a regular business activity.
 
 
 9
 The United States counters the basic premise of the carriers' argument asserting that the documents were not admitted under Rule 803(6) as the "business records" of the repair shops making the estimates, but rather that the entire claims files were properly admitted under 803(6) as the "business records" of the military. As such, the United States argues that it must only establish that the claims files were the "business records" of the military and as a whole constituted records of the regularly conducted activity of adjudicating a service member's claim. Thus, the United States argues that the only foundation testimony necessary to establish the admissibility of these records is that it was the military's regular practice to obtain, integrate, and rely upon the estimates during the claims adjudication process.
 
 
 10
 The Court of Federal Claims agreed with the United States that the files as a whole, including the repair estimates from third-party repair shops contained therein, constituted records of regularly conducted activity of the military in adjudicating claims, and thus the files were admissible under Rule 803(6). See Air Land Forwarders, 38 Fed. Cl. at 555-56. The trial court reasoned that documents may be admitted into evidence as the business records of one of the parties even though they were not prepared by the entity, as long as the entity is able to produce testimony that it was the entity's regular practice to obtain information from such a third party, or that the records were integrated into the office's records and relied upon in its day to day operations. See id. at 556 (citing United States v. Mendel, 746 F.2d 155, 166 (2d Cir.1984)). We detect no abuse of discretion in the trial court's admission of these records.
 
 
 11
 Federal Rule of Evidence 802 is the general rule excluding hearsay: "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The parties do not dispute that the repair estimates at issue fall within the definition of hearsay. Rule 803 enumerates twenty-three exceptions to the hearsay rule. In particular, Rule 803(6) provides an exception to the hearsay rule for records of regularly conducted activity. It states:
 
 
 12
 A memorandum, report, record or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness [is not excluded by the hearsay rule, even though the declarant is available as a witness]. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
 
 
 13
 This court has not previously addressed the question of the foundation testimony necessary to admit documents produced by third parties not before the court under Rule 803(6) where those documents have been incorporated into another business entity's records. Other courts of appeal have addressed this situation in a number of cases and have generally held that a document prepared by a third party is properly admitted as part of the business entity's records if the business integrated the document into its records and relied upon it.
 
 
 14
 In United States v. Childs, 5 F.3d 1328, 1334 (9th Cir.1993), the Court of Appeals for the Ninth Circuit held that documents prepared by third parties and integrated into the records of an auto dealership were properly admitted based on testimony that the documents were kept in the regular course of business and were relied upon by the dealership. The Ninth Circuit found the fact that the auto dealership relied upon the accuracy of the documents in its day-to-day business activities particularly relevant. The court distinguished its earlier ruling in NLRB v. First Termite Control Co., 646 F.2d 424 (9th Cir.1981), in which it reversed a district court's decision to admit a freight bill prepared by a third party, by explaining "[i]n reaching that decision we emphasized the fact that [the company integrating the document into its records] did not rely on the portion of the record at issue and 'had no interest in the accuracy of that portion of the [record].' " Childs, 5 F.3d at 1334 n. 3 (quoting First Termite Control, 646 F.2d at 429). See also MRT Const., Inc. v. Hardrives, 158 F.3d 478, 483 (9th Cir.1998) ( "[R]ecords a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records.") (citing Childs, 5 F.3d at 1333-34 & 1334 n. 3)
 
 
 15
 In United States v. Jakobetz, 955 F.2d 786 (2d Cir.1992), the Second Circuit also adopted this application of the business records exception in admitting into evidence toll receipts that had been incorporated into the business records of a construction company. The court stated:
 
 
 16
 Rule 803(6) allows business records to be admitted "if witnesses testify that the records are integrated into a company's records and relied upon in its day to day operations." Matter of Ollag Constr. Equip. Corp., 665 F.2d 43, 46 (2d Cir.1981). Even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity.
 
 
 17
 Jakobetz, 955 F.2d at 801 (citing United States v. Carranco, 551 F.2d 1197,1200 (10th Cir.1977)).
 
 
 18
 The Eleventh Circuit, in United States v. Parker, 749 F.2d 628, 633 (11th Cir.1984), also agreed that it is not necessary under Rule 803(6) that the records be prepared by the business that has custody of them and the fact that "the witness and his company had neither prepared the certificate nor had first-hand knowledge of the preparation does not contravene Rule 803(6)." See also United States v. Sokolow, 91 F.3d 396, 403 (3d Cir.1996) (explaining that business records exception still applies even though the records were derived from outside sources as long as there are other assurances of accuracy present); United States v. Doe, 960 F.2d 221, 223 (1st Cir.1992) (invoice properly admitted even though it was previously the record of another company); United States v. Ullrich, 580 F.2d 765, 771-72 (5th Cir.1978) (documents furnished originally from other sources but kept in the regular course of business and relied upon to confirm inventory were properly admitted under 803(6)).
 
 
 19
 The above cases hold that Rule 803(6) does not require that the document actually be prepared by the business entity proffering the document. Rather, the cases stress two factors, indicating reliability, that would allow an incorporated document to be admitted based upon the foundation testimony of a witness with first-hand knowledge of the record keeping procedures of the incorporating business, even though the business did not actually prepare the document. The first factor is that the incorporating business rely upon the accuracy of the document incorporated and the second is that there are other circumstances indicating the trustworthiness of the document. See, e.g., Munoz v. Strahm Farms, Inc., 69 F.3d 501, 503 (Fed.Cir.1995) ("Reliability is the basis for admitting evidence under the business records exception.").
 
 
 20
 The trial court found both reliance and additional assurances of credibility to be present in this case. First, the repair estimates at issue were clearly relied upon by the military during the claims adjudication process. See Air Land Forwarders, 38 Fed.Cl. at 556. The trial court found that the military considered the entire record, third-party repair estimates, in making its decision on the proper amount of compensation to be paid to the service member. See id. at 553. Compare MRT, 158 F.3d at 483 (bills prepared by third party and incorporated into a company's records admissible under Rule 803(6) to establish fees paid because company relied upon bills as statements of fees owed) with First Termite Control, 646 F.2d at 428 (explaining that certain records prepared by third party not admissible under Rule 803(6) to prove origin of lumber because nothing in the trial record indicated that there was a reason for offering party to be interested in the accuracy of the records as far as they referred to the origin of the lumber).
 
 
 21
 Second, the trial court explained that there were other assurances of reliability. Military service members could be fined and/or imprisoned for submitting a false claim. See id. at 556. The claims submitted by the service members, which included the estimates, were filed with an accompanying statement acknowledging potential criminal prosecution for falsity. This was a clear indicia of trustworthiness of the repair estimates and in the minimum allowed the military claim office to rely upon the accuracy of the claims filed and allowed the documents filed with the claims to be incorporated into the military's business records.
 
 
 22
 The trial court also found that Military Claims Office personnel were responsible for becoming familiar with the competency of estimators in the local area and with the estimating process in general, thus enabling them to reject questionable estimates. See id. These additional guarantees of reliability further support the conclusion that the repair estimates at issue were properly admitted by the trial court even though the government did not produce a witness that could testify with first-hand knowledge as to the procedures used in the original preparation of each of the repair estimates. As the cases described above indicate, such testimony is not necessary where an organization incorporated the records of another entity into its own, relied upon those records in its day-to-day operations, and where there are other strong indicia of reliability.
 
 
 23
 In fact, given the significant additional assurances of reliability, the documents at issue may also be admissible pursuant to Rule 807, which is the residual exception to the hearsay rule.[2] However, because Rule 807 was not advanced as a ground for admissibility at trial and we find no abuse of discretion in the trial court's decision to admit the challenged documents under Rule 803(6), we do not address the admissibility of the documents under Rule 807.
 
 
 24
 The dissent is concerned that under our holding in this case, a law enforcement agency, such as the FBI, could collect statements and documents from unidentified informants and then introduce those statements and documents as business records of the agency as long as the agency could show that the records were retained and relied upon by the agency in the course of investigating federal crimes. Our holding certainly does not support such a broad theory of admissibility. Records kept in the course of a criminal investigation are generally maintained for the purpose of prosecuting a potential criminal defendant. Such records lack the other assurances of credibility and trustworthiness that our holding requires for admissibility of incorporated documents prepared by third parties. See, e.g., United States v. Bohrer, 807 F.2d 159, 162-63 (10th Cir.1986) (IRS contact card not admissible as a business record of the IRS in a prosecution for willful failure to file income tax returns because the card was maintained for the purpose of prosecuting the defendant and therefore "pose[d] a situation 'dripping with motivations to misrepresent.' ").
 
 
 25
 Furthermore, some of our sister circuits have explicitly held that since Rule 803(8)(B)[3] specifically excludes reports prepared by law enforcement from the public records exception to the hearsay rule if used against a criminal defendant, admitting such records under the business records exception would render Rule 803(8)(B) meaningless. Therefore, "the business records exception cannot be used as a 'back door' to introduce evidence that would not be admissible under Rule 803(8)(B)." United States v. Brown, 9 F.3d 907, 911 (11th Cir.1993); see United States v. Blackburn, 992 F.2d 666, 671 (7th Cir.1993) ("[I]f a document prohibited under Rule 803(B) or (C) can come into evidence under Rule 803(6), then the 803(8) restrictions are rendered nugatory.").
 
 CONCLUSION
 
 26
 Because the trial court did not abuse its discretion in admitting into evidence repair estimates prepared by third parties as "business records" of the military under Rule 803(6), the judgment of the Court of Federal Claims is hereby
 
 AFFIRMED
 
 27
 BRYSON, Circuit Judge, dissenting.
 
 
 28
 This case turns on a single point of evidence law, but an important one. At issue is the interpretation of what is probably the most commonly invoked exception to the federal hearsay rule, the "business records" exception.
 
 
 29
 The business records exception is embodied in Rule 803(6) of the Federal Rules of Evidence. Rule 803 provides, in pertinent part:
 
 
 30
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 
 
 31
 (6) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness....
 
 
 32
 By its terms, the rule requires several conditions to be satisfied before a document can be admitted under the business records exception. A sponsoring witness, either the custodian of the records or another qualified witness, must testify (1) that the records in question were made contemporaneously with the recorded events, (2) that the records were made by, or from information transmitted by, someone with personal knowledge of the events, (3) that the records were kept in the course of a regularly conducted business activity, and (4) that it was the customary practice of that business activity to prepare such records. See 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 803.11 (Joseph M. McLaughlin ed., 2d ed.1998). The records "must be excluded if a witness cannot vouch that the requirements for admission have been met." Id. § 803.11, at 803-61 (listing cases).
 
 
 33
 The documents at issue in this case cannot be admitted as the business records of the entities that prepared the estimates because none of the above prerequisites for admission has been satisfied. The documents consist of notations on various slips of paper purporting to reflect some unidentified person's estimate of the cost of repairing particular items of furniture. The government failed to call any witness who could provide any of the required foundational testimony. The witnesses that the government did call--representatives of the government agencies that received the documents--did not know who prepared the documents, whether they were prepared contemporaneously with the events reported (i.e., the damage and repair estimates), whether they were prepared in the ordinary course of a business activity, or whether it was the regular practice of that business activity to perform repair estimates. The government's evidence thus completely failed to satisfy the requirements of Rule 803(6). This was not a technical flaw in an otherwise compelling array of proof. It was a wholesale failure to satisfy any of the elements of the business records exception to the hearsay rule. Moreover, the documents in question were not simply cumulative or marginally relevant materials: The documents constituted the only proof of value offered by the government in each of the cases before us on appeal.
 
 
 34
 Apparently aware that the repair estimates could not be admitted on the basis of testimony about the circumstances of their preparation, the government argues that the documents are admissible as the business records of the government agency that collected them in the course of preparing for this litigation. The government's theory is this: The documents were assembled by Department of Defense personnel responsible for paying service members' claims for damage caused to their furniture by private carriers in the course of moving, and for subsequently making claims against those carriers. At trial, representatives from the Defense Department testified that they had collected the estimate records, and that they had relied on those records in paying the service members' claims and in seeking reimbursement from carriers such as the appellants. Because the Defense Department retained the records and relied on them, the government argues, those records are admissible as business records of the Defense Department.
 
 
 35
 This theory, which the court today adopts, is squarely at odds with the text of Rule 803(6). The rule requires foundational evidence to establish the circumstances in which the record in question was made. The government's witnesses, however, were unable to testify about any of those circumstances. Instead, the government's witnesses testified about the circumstances under which the government received and retained the records. But that is not good enough, under Rule 803(6), to justify the admission of the records for the truth of their contents. Where, for example, is the evidence that any of the records were made at or near the time of the event recorded or that any of the records were made by or from information transmitted by a person with knowledge? It is missing. The government witnesses admitted they had no idea of the circumstances under which the records were prepared. Under the rule, that should have been the end of the matter, and the evidence should have been ruled inadmissible under Rule 803(6).
 
 
 36
 Both the government and the court emphasize what they perceive as the reliability of the records in this case, purportedly ensured by the government's interest in obtaining accurate estimates of the damage to service members' property. There are three problems with this focus on reliability.
 
 
 37
 First, a party's general interest in obtaining reliable information from a source is not sufficient to render that information reliable, as that term is used in the hearsay rules. I may have every expectation and desire that the statements my bank sends me every month are accurate, but my assumptions and wishes do not make the statements reliable absent evidence about how the statements were prepared.
 
 
 38
 Second, the particular grounds recited by the government for concluding that the repair estimates are reliable are not convincing. The penalties to which service members were subject for filing a false claim would affect only cases in which the service member knowingly submitted an inflated estimate, not cases in which the estimate was unreliable but the service member had no reason to know that it was. Nor was there any sufficient guarantee of reliability in the very general testimony of the government witnesses that military officials who handled claims tried to become familiar with estimators in particular areas and sometimes rejected estimates as appearing to be too high (even though the military claims representatives did not personally view the damaged property).
 
 
 39
 Third, Rule 803(6) does not permit evidence that does not satisfy the rule to be admitted as long as it is considered reliable. To the contrary, the only role reliability plays in the Rule 803(6) calculus is to exclude evidence that otherwise qualifies for admission. Thus, even if particular records otherwise satisfy all the foundational requirements of the rule, the records must be excluded if the "source of information or the method or circumstances of the preparation [of the records] indicate lack of trustworthiness." A finding of reliability, by itself, does not authorize admission under the rule.
 
 
 40
 At bottom, the government's position is that even though it can offer no evidence regarding the circumstances under which the estimate documents were prepared, the documents can be admitted for their truth simply because the government collected the records, retained them, and relied on them. Under this theory, the government (or, for that matter, a private party) could presumably urge the admission of records collected from any source whatsoever, as long as the records were retained in a file and relied on in some way. Thus, the FBI could collect statements by unidentified informants and introduce those statements as business records, as long as it could show that the records were retained and relied upon in the course of the FBI's business of investigating federal crimes. While such a proposition may seem hyperbolic, it appears to be consistent with the government's theory of admissibility in this case. Significantly, the government's counsel, upon being asked a question based on that hypothetical example, did not concede that such documents would be inadmissible. But the inadmissibility of such documents cannot be denied. See, e.g., Cameron v. Otto Bock Orthopedic Indus., Inc., 43 F.3d 14, 16-17 (1st Cir.1994) (product failure reports generated by doctors and collected by manufacturer of medical device not admissible as business records of manufacturer); Meder v. Everest & Jennings, Inc., 637 F.2d 1182, 1186-87 (8th Cir.1981) (police report based on statements from accident witnesses not admissible as business record); United States v. Pazsint, 703 F.2d 420, 424 (9th Cir.1983) (police tapes of emergency phone calls not admissible as business records). The court's reasoning in Pazsint is directly relevant here:
 
 
 41
 [T]he police officer who made the recordings was acting in the regular course of business, but he had no knowledge of the truthfulness of the information being recorded, while the witnesses who gave the information which was recorded had personal knowledge but were under no business duty to report. The latter's tape-recorded statements can not be given the presumption of reliability and regularity accorded a business record.
 
 
 42
 703 F.2d at 425 (citing United States v. Smith, 521 F.2d 957, 964 (D.C.Cir.1975); Advisory Committee Note to Fed.R.Evid. 803(6)).
 
 
 43
 To be sure, Rule 803(6) does not require that the sponsoring witness be the maker of the documents, as long as the sponsoring witness can satisfy all the foundational requirements of the rule. See Weinstein's Federal Evidence, supra, § 803.11, at 803-61 to 803-64; 2 Kenneth S. Broun et al., McCormick On Evidence § 292 (John William Strong ed., 4th ed.1992); United States v. Parker, 749 F.2d 628, 633 (11th Cir.1984). But a custodian who has simply collected a group of documents from a wide array of sources and who has no personal knowledge of the circumstances under which those documents were prepared is not qualified to give the necessary foundational testimony. See Weinstein's Federal Evidence, supra, § 803.11, at 803-70 ("The person to whom the information is offered cannot qualify ... [if] he or she does not have personal knowledge of the underlying event."). This court underscored that point in Kolmes v. World Fibers Corp., 107 F.3d 1534 (Fed.Cir.1997), in which one of the parties sought to admit the internal invention disclosure documents of a third-party company in an effort to invalidate a patent. We held the documents inadmissible under the business records exception, because the sponsoring witness "did not know when or how the documents were prepared." Id. at 1542.
 
 
 44
 It is also true that in some circumstances records prepared by one entity may be introduced as the business records of another. Those circumstances are addressed in McCormick On Evidence:
 
 
 45
 Problems may arise when one business organization seeks to introduce records in its possession but actually prepared by another. It seems evident that mere possession or "custody" of records under these circumstances does not qualify employees of the possessing party to lay the requisite foundation, and that the transmittal of information by the custodian regarding the contents of records in the custodian's possession does not qualify the recipient to lay the foundation. However, when the business offering the records of another has made an independent check of the records, or can establish accuracy by other means, the necessary foundation may be established.
 
 
 46
 McCormick On Evidence, supra, § 292.
 
 
 47
 Thus, a company in possession of documents prepared by another company may introduce the documents as its own business records, even if the sponsoring witness from the custodian company cannot vouch for the circumstances under which the documents were prepared, provided that the custodian company "has made an independent check of the records, or can establish accuracy by other means." McCormick On Evidence, supra, § 292. The custodian company's independent check of the documents acts as a proxy for the requirement that the records have been prepared by someone with personal knowledge of the recorded events. By verifying the documents, the custodian company is in essence acquiring personal knowledge of the recorded events, and thereby effectively adopting the entries in the documents as his own. See, e.g., Munoz v. Strahm Farms, Inc., 69 F.3d 501, 36 U.P.S.Q.2d 1499 (Fed.Cir.1995) (slides dated by Kodak admitted as business records of photographer in light of photographer's testimony that it was his regular practice to send film to Kodak for processing and to check the dates on the slides when he received them from Kodak shortly thereafter).
 
 
 48
 Several of the cases cited by the government fit this pattern, in which business records prepared by one entity have been admitted as the records of a second entity, because the first entity's records were integrated into the record system of the second entity, which was able to confirm the accuracy of the records. For example, in United States v. Childs, 5 F.3d 1328, 1333-34 (9th Cir.1993), and United States v. Ullrich, 580 F.2d 765, 771-72 (5th Cir.1978), the courts upheld the admission of automotive records as the business records of car dealerships. Although the dealerships had not prepared the records, the dealerships relied on the documents' identification of individual cars in keeping track of cars in the dealerships' possession. Because the dealerships confirmed the accuracy of the records as they used them, the records were in effect converted into the dealerships' records and admissible as such.
 
 
 49
 The same analysis has been applied to uphold the admission of a freight bill, which was initially prepared by another entity, but which was used by the custodian company to determine whether items were missing from a shipment, and on which representatives from the custodian company noted any discrepancies. See United States v. Carranco, 551 F.2d 1197, 1200 (10th Cir.1977). By virtue of the use made of the record, and the fact that the custodian company adopted the record as its own and confirmed its accuracy, the record was deemed admissible as a business record of the custodian company. See also United States v. Doe, 960 F.2d 221, 223 (1st Cir.1992) (gun sale invoice from other company was record of sports shop for purposes of showing purchase of gun because sports shop owner noted receipt of gun on the invoice at the time of receipt and used the invoice as his record of acquisition of gun).
 
 
 50
 The analysis applied in the above cases cannot be stretched to fit the facts of this case. This is not a case in which records made by one entity became the business records of another entity when the pertinent contents of the records were verified by the second entity. Instead, the evidence showed that the repair estimate documents were placed into the military claims files, without further corroboration or verification, and used as the basis for paying the service members' claims and litigating against the carriers. Although there was general testimony from two witnesses that the military attempted to find reliable estimators and would occasionally request a second estimate if the first seemed much too high in light of the damage report, the government offered no evidence that representatives of the agencies that received the estimates conducted any kind of audit to check their accuracy.
 
 
 51
 This case is therefore distinguishable from United States v. Sokolow, 91 F.3d 396 (3d Cir.1996), which the court cites. In Sokolow, the Third Circuit upheld the admission of an exhibit consisting of insurance claim adjustments made by Inservco, an administrator hired to adjust the claims after the liquidation of the insurance company to which the claims had been submitted. Because Inservco verified the information submitted on the proof of claim forms, the court admitted the forms as Inservco's business records. 91 F.3d at 403-04. Although the business records were "derived in part from information provided by outside persons not under a business compulsion," the business records exception was satisfied, the court explained, because Inservco had "adequate verification or other assurance of accuracy of the information provided by the outside person." Id. at 403. In effect, the act of verification converted the claim forms from records made by a third party into records made by Inservco in the course of its ordinary business activities.
 
 
 52
 An instructive case in light of the government's argument is NLRB v. First Termite Control Co., 646 F.2d 424 (9th Cir.1981). In that case, the NLRB sought to introduce a freight bill prepared by Southern Pacific Railroad to show that a particular shipment of lumber was delivered from Washington to California. The NLRB offered as a sponsoring witness a representative of Economy Lumber Co., the company that received the freight bill and thereafter retained custody of it. Following a detailed analysis, the court rejected the NLRB's argument that the freight bill was admissible as Economy Lumber's business record, on the ground that the sponsoring witness was unable to provide the foundational evidence necessary to invoke Rule 803(6).
 
 
 53
 The court explained that the provision in Rule 803(6) that requires records to be supported by " 'the testimony of the custodian or other qualified witness' insures the presence of some individual at trial who can testify about the methods of keeping the information." 646 F.2d at 427. If the witness is not knowledgeable as to the manner in which the records are made and kept, the court explained, he or she cannot be subjected to meaningful cross-examination. "Without cross-examination on the keeping of the records, the trier of fact would have no rational basis on which to evaluate the accuracy of the record, and therefore the trustworthiness of the evidence." Id. Because the witness from Economy Lumber Co. "had no knowledge of how Southern Pacific's records were made or maintained," the court held her testimony insufficient to support the admission of the document. Id. Distinguishing other cases in which freight bills had been admitted, the court noted that in those cases the sponsoring witnesses were familiar with the procedures used by the companies that made the records in question, and the companies that adopted the records checked them for accuracy and relied on the information in them in their regular course of business. Id. at 428-29.
 
 
 54
 A particularly close analogue to this case is provided by the Fifth Circuit's decision in United States v. Davis, 571 F.2d 1354 (5th Cir.1978). In that case, the government sought admission of a document that reflected the manufacture, sale, and shipment of a firearm. The document was executed by a representative of Colt Industries and sent to the Bureau of Alcohol, Tobacco and Firearms (BATF). The government's theory in Davis, as here, was that the record was a business record of the BATF, even though it had been made by Colt and was merely on file with the BATF. Although the district court accepted that argument, the court of appeals rejected it. The court pointed out that the document was not shown to have been "made at or near the time" of the events reported and that it was not shown that the report had been made "by, or from information transmitted by, a person with knowledge" of those acts or events. 571 F.2d at 1359-60. The court added that the foundation evidence likewise afforded "no basis for determining whether 'the source of [the] information or the method or circumstances of preparation indicate lack of trustworthiness.' " Id. at 1360 n. 10. Thus, the court rejected exactly the argument that the government has made here: that the records prepared by another entity should be regarded as business records of the government simply because the government retained those records in files and relied on them in litigation. See also United States v. Furst, 886 F.2d 558, 570-72 (3d Cir.1989) (records excluded when sponsoring witness had no "knowledge as to the accuracy of the information" on which the documents in question were based, "or as to the knowledge of the persons who prepared the records"); United States v. Pazsint, 703 F.2d at 424-25 (records excluded because officer who prepared records "had no knowledge of the truthfulness of the information being recorded"); White Indus., Inc. v. Cessna Aircraft Co., 611 F.Supp. 1049, 1059 (W.D.Mo.1985) ("the mere presence of a document--no matter what its authorship--in the retained files of a business entity does not by itself qualify that document as a record of 'regularly conducted activity' ").
 
 
 55
 Against this array of authority, the court today is able to find only two cases in which courts appear to have admitted evidence under Rule 803(6) without requiring full compliance with the foundational requirements of the rule: United States v. Jakobetz, 955 F.2d 786 (2d Cir.1992), and MRT Construction Inc. v. Hardrives, Inc., 158 F.3d 478 (9th Cir.1998). The business records issue in the Jakobetz case involved a bridge toll receipt that the defendant submitted to his employer to obtain reimbursement of trip expenses. The receipt was introduced into evidence at the defendant's trial to show that he was at the bridge in question at the time indicated on the toll receipt. The court held the receipt admissible as a business record of the company to which the defendant had submitted it, on the ground that the receipt had been incorporated into the records of the company, even though no witness testified about the circumstances of the record's preparation and there was no evidence that the company had independently verified the information on the receipt. 955 F.2d at 800-01.
 
 
 56
 In holding that the toll receipt was admissible under Rule 803(6) based only on foundation evidence that toll receipts were regularly made part of trip expense reports and that the defendant had submitted the toll receipt to the company as part of the expense record for one of his trips, the court misapplied the rule. Because there was no evidence that the company had verified the information on the receipt, the receipt could not be treated as the company's own business record for purposes of introducing the contents of the record for their truth. The more suitable ground for admitting the receipt, suggested by the court later in its opinion, is that the defendant himself "relied on [the receipt's] authenticity when he submitted the receipt for reimbursement of his expenses." 955 F.2d at 801. The evidence thus should have been admitted as an admission, i.e., "a statement of which the party has manifested an adoption or belief in its truth." Fed.R.Evid. 801(d)(2)(B).
 
 
 57
 The discussion of Rule 803(6) in the MRT Construction case is so cryptic that it is difficult to tell just what the court held. The court rejected an argument that certain attorney bills sent to Hardrives were improperly admitted as business records upon the testimony of Hardrives chief financial officer. In the course of its brief discussion of the issue, the court noted that Hardrives received the bills from the law firm, maintained the bills in their files, and relied upon the bills as statements of fees charged by the law firm. Based on that evidence, the court held the bills admissible under Rule 803(6). 158 F.3d at 483. The problem with the court's analysis is that if the bills were introduced simply to show that the company was billed a certain amount for legal services, the bills were not hearsay at all. And if the bills were introduced for the purpose of proving some assertion of fact contained therein, the testimony of Hardrives' chief financial officer was plainly inadequate to qualify the bills for admission. The latter fact is readily demonstrated by this example: If one of the bills had recited that one of the partners of the law firm was present at an all-day meeting on a particular date, the bill obviously could not be admitted to support the partner's alibi in a murder case based on foundational testimony of a representative of the client to whom the bill was sent. To the extent that the MRT case stands for the proposition that documents obtained from company A can be admitted as business records of company B simply because a representative of company B testifies that company B incorporated company A's records into its files and relied on them, it is unsound.
 
 
 58
 * * * * *
 
 
 59
 In the end, the government's argument comes down to a two-part policy-based plea. First, the government argues that because the military has chosen to make payments to service members based on estimates submitted by the service members, those estimates should be considered reliable enough to admit the estimates against the carriers as substantive evidence of loss. Second, the government argues that it would be unduly cumbersome and expensive to require foundational witnesses to attend trials such as the one in this case to give foundational evidence regarding documents involving relatively small amounts of money.
 
 
 60
 As to the second point, the rules of evidence sometimes create problems for litigants, but there is no principle that permits the rules to be avoided when their application seems inconvenient. If other ways cannot be found to ensure that documentary evidence of property damage in cases such as this one is admissible, the government may be better served by developing a contractual arrangement with its carriers to resolve disputes over damages by means other than court proceedings.
 
 
 61
 As to the first point, the answer is that the government has not shown that the military verified the estimates at issue in this case or confirmed their accuracy. The business records exception is therefore not available as a basis for avoiding the plaintiffs' hearsay objection. To be sure, the military could have had good reasons for honoring the service members' claims without verifying their accuracy, such as a desire to expedite payment to service members whose property has been damaged, or a judgment that a system of verification of damage estimates would not be cost-effective. But the fact that the government has chosen to make payments to service members on the basis of estimate documents having virtually no foundational support does not mean that those documents should be admissible as evidence against third parties in a court of law. In accepting the government's theory of admissibility in this case, the court has disregarded the plain language of Rule 803(6) and gone beyond the scope of any decision applying that rule. I therefore respectfully dissent.
 
 
 
 [1]
 The litigation in the United States Court of Federal Claims consolidated twenty-one separate complaints for decision, Nos. 91-CV-922 through 91-CV-941, inclusive. Of those complaints in the original litigation, only the following ten complaints have been appealed to this court: 91-CV-924, 91-CV-926, 91-CV-927, 91-CV-929, 91-CV-930, 91-CV-933, 91-CV-934, 91-CV-938, 91-CV-940, and 91-CV-941
 
 
 [2]
 Former Federal Rule of Evidence 803(24), the so called "Residual Exception," was replaced by Federal Rule of Evidence 807 on December 7, 1997. These two rules are substantively identical. Rule 807 provides that:
 A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that
 (A) the statement is offered as evidence of a material fact;
 (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
 (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
 However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.
 
 
 [3]
 Federal Rule of Evidence 803(8) states that:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness.... Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
 (emphasis added).